ELOISE LOCKHART,                    )
                                    )
                    Plaintiff,      )          No. 13 C 9323
                                    )
        v.                          )          Judge Thomas M. Durkin
                                    )
HSBC FINANCE CORPORATION, et al.,   )
                                    )
                    Defendants.     )

## MEMORANDUM OPINION AND ORDER

Eloise Lockhart has taken a shotgun approach to this case, filing a fifteen-count amended complaint against numerous Defendants, many of whom were sued under incorrect names, alleging a variety of claims without specifying as to whom they are against. R. 6. All of the conduct relates to a mortgage loan Lockhart took out many years ago and the efforts made to foreclose on Lockhart's home in state court proceedings. The Defendants in the case are as follows: HSBC Finance Corporation and HSBC Mortgage Services, Inc. (collectively referred to as "HSBC"), Household Finance Corporation III ("HFC III"),[1] MERSCORP Holdings Inc. ("MERSCORP"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Pilgrim Christakis LLP, f/k/a Grady Pilgrim Christakis Bell LLP ("Pilgrim Christakis"),

---

[1] Lockhart originally sued "HSBC Mortgage Corporation (USA)," which was dismissed from the case on April 29, 2014. R. 53. Instead, three other HSBC affiliates, who were each named as Defendants and served, are considered proper parties in the case. *See id.* The Court has not been provided with an explanation as to the relationship between these affiliate entities—HSBC Finance Corporation, HSBC Mortgage Services, Inc., and HFC III—and from the briefs and the amended complaint, HSBC Finance Corporation and HSBC Mortgage Services appear to be referred to collectively as simply "HSBC." For clarity, the Court will do the same.

Jeffrey Pilgrim, Brady Pilgrim, Arnold G. Kaplan, Freedman Anselmo Lindberg LLC ("FAL"), Steven C. Lindberg, and "Jane & John Does 1-10," as agents/employees of Pilgrim Christakis and Kaplan. Certain Defendants have filed motions to dismiss Lockhart's amended complaint, contending that it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). [2] R. 35; R. 38; R. 42. For the following reasons, those motions are granted in part and denied in part.

## BACKGROUND

Lockhart resides in Texas and is licensed to practice law in Illinois and Texas. R. 6 ¶ 5.[3] HSBC is a large bank that, among other things, offers financing to consumers looking to purchase a home. R. 6 ¶ 6. MERSCORP is the sole shareholder of MERS, which operates an electronic registry used to track mortgage loans in the United States. *Id.* ¶ 15. FAL is a law firm located in Naperville, Illinois, that is "engaged in the business of using the mails and telephone to collect consumer debts originally owed to others, including residential mortgage debts[.]" R. 6 ¶¶ 35-36. Pilgrim Christakis is a law firm located in Chicago, Illinois, specializing in "commercial litigation, consumer finance law[,] and real estate business information." *Id.* ¶¶ 41-42. Steven Lindberg is an attorney at FAL; Jeffrey Pilgrim and Brady Pilgrim are attorneys at Pilgrim Christakis.

---

[2] No attorney has appeared on behalf of FAL or Steve Lindberg. Nonetheless, certain arguments they might otherwise have put forth have been advanced in the motions of the other Defendants and apply to them as well.

[3] The Court notes that even though Lockhart filed this action pro se, she is a licensed attorney.

In October 1973, Lockhart purchased a piece of property located at 2020-22 W. 80th Street in Chicago, Illinois, to use as a residence for herself and her family. *Id.* ¶ 45. Lockhart estimates that in 2003 the fair market value of the property was between $150,000 and $200,000. *Id.* ¶ 46. In May 2003, Lockhart owed roughly $31,650 on her existing mortgage with an interest rate of 5.05%, making her monthly mortgage payment about $564. *Id.* ¶ 47.

In May 2003, Lockhart received a flyer stating that she was pre-approved to refinance her mortgage. *Id.* ¶ 49. Lockhart applied for a loan from the lender (Fieldstone Mortgage) on May 19, 2003, who stated that the loan would have a fixed rate of 8.625% over thirty years and that the loan did not include a prepayment penalty. *Id.* ¶ 51. Lockhart executed the "Mortgage and Note" on May 29, 2003. *Id.* ¶ 52. The terms of the loan were as follows: "[Lockhart] promised to pay the lender $105,000 at a fixed rate of 8.625% annual interest over a period of 30 years for monthly payments of $987.00 which included amounts to be escrowed for taxes and insurance." *Id.* The lender imposed a prepayment penalty along with other charges that Lockhart had to pay before obtaining the loan.[4] *Id.* ¶ 53. The Escrow Account Disclosure statement revealed that $168.53 would be added to the monthly principal and interest payments to account for future county taxes and "hazard insurance" payments. *Id.* ¶ 55.

---

[4] It is not exactly clear what Lockhart means when she alleges that "[t]he lender imposed a prepayment penalty . . . before [she] could get the loan," R. 6 ¶ 53, because, generally, a prepayment penalty is imposed when a debtor attempts to pay off a loan, not at a closing or when entering into a loan.

Sometime in 2004, Lockhart received a notice indicating that her taxes on the property were delinquent and that her property would be sold due to the unpaid taxes. *Id.* ¶ 56. HSBC, which was the "servicer on the loan," had not used Lockhart's escrow payments to pay the taxes owed and insurance. *Id.* ¶ 57. In October 2004, HSBC raised Lockhart's monthly mortgage payment by more than $500.00 per month. *Id.* ¶ 58. HSBC, as the loan servicer, had the ability to "force place insurance" in order "to protect the lender's interest if [Lockhart] had allowed the insurance to lapse or was in default." *Id.* ¶ 59. Lockhart alleges that HSBC generated additional profits at her expenses "[b]y charging [Lockhart] unreasonably inflated insurance premiums, paid through to an affiliate[.]" *Id.* ¶ 60.

In December 2004, Lockhart canceled the force placed insurance and obtained replacement insurance with Allstate. *Id.* ¶ 61. In February 2005, HSBC acknowledged that Lockhart's escrow accounts were now closed and that her monthly mortgage payment was $815.00 per month. *Id.* Nevertheless, "Defendant's (sic) continued to claim that the rightful mortgage payment was $1,350.00 per month." *Id.* ¶ 62.

In March 2005, Lockhart called a hotline number (611) that had been set up for homeowners to call if they were in "foreclosure distress." *Id.* ¶ 63. Lockhart, in a three-way call with a counselor with the hotline and an employee of HSBC, was told by the HSBC employee that she owed $1,350.00 for both February and March ($2,700 total) and that as of April 2005, she would be three months in arrears. *Id.* ¶¶ 64-65. The HSBC employee further stated that if the two payments were not

received by April 1, 2005, the loan would be referred to foreclosure. *Id.* ¶ 65. Lockhart alleges that she agreed to send two payments of $1,350 by April 1, 2005, and "HSBC agreed to investigate [her] claim that her property payment was about $815.00 [per month] and not $1,350.00[.]" *Id.* ¶ 66. Lockhart claims that she made two payments by express mail on March 29, 2005 (which HSBC claimed on March 29, 2005, that they did not receive); and later, two additional payments through Western Union on the eve of March 31, 2005, to avoid foreclosure proceedings. *Id.* ¶¶ 68-69.

Lockhart received a letter from HSBC on April 15, 2005, which stated that her monthly mortgage payment was $815. On May 19, 2005, Steven Lindberg, an attorney at FAL, mailed a letter to Lockhart claiming that he was a debt collector for HFC III, who now owned Lockhart's note. *Id.* ¶ 73. The letter also stated the owner of the note was exercising its right to accelerate the note and in turn demanding that Lockhart pay the total outstanding amount of $108,977.59. *Id.* Furthermore, the letter stated that Lockhart had thirty days under federal law to dispute the action. *Id.* ¶ 74. In response, Lockhart sent Lindberg a letter disputing the debt, in part directing him to the money order number for at least one $1,000 payment in 2004 that she claims HSBC never credited to her account. *Id.* ¶ 75.

FAL did not respond to Lockhart's letter or wait thirty days after it sent the letter to initiate further proceedings. *Id.* ¶ 76. Instead, on May 25, 2005, FAL filed a foreclosure complaint, 05 Ch 9047 ("Case One"), listing "Mortgage Electronic Systems, INC [MERS] As Nominee For Household Finance Corporation III [HFC

III].” *Id.* HSBC also alleged in Case One that it “owned and held the mortgage and note as mortgagee on the May 29, 2003 Mortgage,” *id.* ¶ 78, though Lockhart claimed that was also untrue because Fieldstone Mortgage was the actual owner, *id.* ¶¶ 81-82. Furthermore, the initial foreclosure complaint bears a recording identification number of 0315726217, which identifies a different mortgage—one covering a condominium property in Oak Park, Illinois. *Id.* ¶¶ 85-86. Lockhart alleges that “Defendants” altered her mortgage “by attaching the false recording identification to make it appear that Defendants MERS/HSBC had standing as record lien holders when they had no such standing.” *Id.* ¶ 87.

On July 5, 2005, Lockhart filed a “verified answer” to Case One in which she denied, among other allegations, that MERS/HFC III was the lender on her mortgage and that she was in default. *Id.* ¶¶ 77, 91. Ten days later, on July 15, 2005, Lindberg moved to voluntarily dismiss Case One, and it was dismissed without prejudice. *Id.* ¶ 92. “[O]n virtually the same day,” HSBC wrote a letter to Lockhart claiming that she owed over $7,000 in arrears under the mortgage and that payment was due by August 1, 2005. *Id.* ¶ 95.

On August 2, 2005, sixteen days after Case One was dismissed, FAL wrote to Lockhart stating she owned $112,226.12 because her note had been accelerated because she was in default. *Id.* ¶ 99. On August 5, 2005, MERS and HSBC filed a second foreclosure action, 05-Ch-13290 (“Case Two”). *Id.* ¶ 100. The complaint in Case Two included a legal description of the two lots that Lockhart owned. *Id.* ¶

101. Lockhart answered that complaint and again denied that MERS or HSBC had standing to pursue the mortgage foreclosure action. *Id.* ¶ 102.

The terms of the loan allowed Lockhart to rescind the loan within three years of the date the loan was executed (May 29, 2003). *Id.* ¶¶ 112-13. On May 1, 2006, while Case Two was still pending, Lockhart informed the Defendants that she planned to exercise her right to rescind the loan. *Id.* ¶ 112. In her notice of rescission, Lockhart alleged that the Defendants violated certain laws. *Id.* ¶ 115. According to Lockhart, "Defendants" received her notice on May 1, 2006, yet "Douglas Oliver"[5] waited until June 1, 2006, to respond. *Id.* ¶ 113. Lockhart claims that she was only provided "with one federal Notice of Right to Cancel in a form that she could keep, instead of the two required under federal law." *Id.* ¶ 115. On June 11, 2007, Lockhart and Defendants each voluntarily dismissed their respective cases. *Id.* ¶ 117.

On June 26, 2007, Lindberg sent Lockhart a letter stating that HSBC was the holder of the mortgage and note, and that Lockhart owed at least $139,140.30. *Id.* ¶ 118. On September 7 2007, "Defendants" filed their third foreclosure complaint, 07-Ch-24236 ("Case Three"), which is currently pending in Illinois state court. *Id.* ¶ 120. HSBC claimed that they were the mortgagee because of an assignment from MERS to HFC, though Lockhart claims that no date was given as to when this assignment occurred. *Id.* ¶¶ 125-26. In response, Lockhart retained

---

[5] Lockhart refers to him as "Defendant Douglas Oliver" in her amended complaint, e.g., R. 6 ¶¶ 113, 115, but he is not named as a defendant, and no further information about his employer is given.

Defendant Kaplan, an Illinois attorney, to represent her in Case Three and file a motion to dismiss on her behalf. *Id.* ¶ 120. Lockhart alleges that Kaplan failed to file the motion or be present at the default summary judgment hearing in January 2008, at which a default judgment was entered against Lockhart. *Id.* ¶ 121. Lockhart alleges that Kaplan did not file the motion or appear at the hearing because of a conspiracy between FAL, MERS, and Kaplan. *Id.*

Lockhart was apparently able to have the default judgment against her vacated because the case is ongoing, though she does specify when or under what circumstances that occurred. Nevertheless, Lockhart further alleges that Kaplan entered into a "scheme" with FAL and Pilgrim Christakis in January 2010 "wherein he deleted material allegations in [Lockhart's answer to the complaint in Case Three] in an attempt to render [Lockhart's] Answer and Counterclaim insufficient to withstand a . . . motion to dismiss and faxed the altered pleading to Defendants." *Id.* ¶ 123. Lockhart claims FAL and Pilgrim Christakis later filed the altered answer with the court as an attachment to a motion to dismiss a counterclaim of fraud that she had alleged, which the state court judge granted at some point. *Id.* ¶¶ 123-24.

On July 8, 2010, the judge in Case Three ordered Raechelle Norman,[6] an attorney at Pilgrim Christakis, to provide a history of the foreclosure litigation

---

[6] Lockhart refers to Norman as being a defendant in this case, yet Norman is not listed in the caption of her amended complaint, nor does her name appear on the docket as being a defendant. All arguments discussed below that are applicable to Jeffrey Pilgrim and Brady Pilgrim are also applicable to her, in addition to "Jane

regarding Lockhart's property. *Id.* ¶ 131. On August 26, 2010, Norman filed a motion claiming that HSBC filed their initial foreclosure complaint—in Case One—in August 2005. *Id.* ¶ 132. At some point thereafter, the judge in Case Three also gave the Defendants until December 10, 2010, to file an answer to Lockhart's still-pending counterclaims, which had been filed in March 2008. *Id.* ¶ 135. According to Lockhart, Norman ignored that order and instead sent Lockhart a letter stating that they were not required to file an answer to Lockhart's counterclaims. *Id.* ¶ 136. Lockhart alleges that as of December 2013, the Defendants had still not filed an answer to her counterclaims which has "prevent[ed] that litigation from going forward."

As a result of these events, Lockhart filed this action on December 30, 2013. R. 1. Lockhart claims that the Defendants have continued to fraudulently file unverified papers throughout Case Three's pending litigation, R. 6 ¶ 139, and despite ongoing state actions lasting over seven years, "have yet to produce any proof that they ever had or ever believed they had any legal right to foreclose on [Lockhart's] property." *Id.* ¶ 142. Lockhart further claims that the Defendants have continued to send various letters and collection notices to Lockhart's home advising her of late fees and additional monthly mortgage fees owed. R. 6 ¶ 152. Moreover, Lockhart alleges that FAL and HSBC's state court filings have made it difficult for her to sell her home. *Id.* ¶ 151. In sum, Lockhart claims the collective Defendants

---

and John Does 1-10, as agents and/or employees related to Defendants [Pilgrim Christakis] and [Kaplan]."

have caused her harm by entering into a large-scale conspiracy to illegally foreclose on her home. *See* R. 6.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Additionally, "claims sounding in fraud are subject to a more stringent pleading requirement." *Sadler v. Retail Props. of Am., Inc.*, No. 12 C. 5882, 2014 WL

2598804, at *7 (N.D. Ill. June 10, 2014). Federal Rule of Civil Procedure 9(b) requires plaintiffs alleging fraud to state "with particularity" the circumstances constituting fraud. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (noting that plaintiffs in securities fraud cases must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud'" (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976))). "In other words, Plaintiffs need[] to plead 'the identity of the person who made the misrepresentation, the time, place[,] and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [Plaintiffs].'" *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 870 (7th Cir. 2013) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008)) (second and third alternations in *Gandhi*). This encompasses the "'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)).

## ANALYSIS

Lockhart's amended complaint includes fifteen claims: three claims are brought pursuant to the Racketeering Influenced and Corrupt Organization Act ("RICO"), 11 U.S.C. § 1962 (Counts I, II, and III); one is for wire fraud in violation of

18 U.S.C. § 1343 (Count IV); one is for fraud and deceit in violation of 18 U.S.C. § 1503 (Count V); one is for "false oaths" in violation of 18 U.S.C. § 1623(a) (Count VI); one is for a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count VII); one is for a violation of the Fair Debt Collections Practices Act ("FDCPA") (Count VIII), 15 U.S.C. §§ 1692e, 1692j; two claims for racial discrimination, one under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982 (Count IX) and the other under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, 3604, and 3605 (Count X); one for a violation of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602(aa) (Count XI); two claims for a violation of the Illinois Interest Act, 815 ILCS 205/4(2)(a), 205/5 (Counts XII and XIII); one for a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(f) (Count XIV); and one generalized claim for punitive damages (Count XV).

## I.  Counts I, II, III – RICO

Counts I, II, and III appear to be against all of the named Defendants. *See* R. 6 ¶¶ 176-196. Lockhart alleges that the Defendants, as members of an enterprise, engaged in a conspiracy "to file false fraudulent foreclosures, false assignments, false letters and other false documents with courts, county clerks [sic] to promote their scheme to defraud the public, Plaintiff, and the judiciary too [sic] fictionalize foreclosures in the name of parties without standing, and to collect unlawful debts." *Id.* ¶ 180.

The RICO statute expressly states:

It shall be unlawful for any person who has received any income, directly or indirectly, from a pattern of racketeering activity or through

> collection of an unlawful debt in which such person has participated as a principal within the meaning [of 18 U.S.C. § 2] to use or invest . . . any part of such income . . . in the establishment or operation of . . . any enterprise[.]

18 U.S.C. § 1962(a). To state a civil claim, a RICO plaintiff must adequately allege: (1) conduct, (2) of an enterprise, (3) through a pattern of (4) racketeering activity. *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). Nevertheless, civil RICO claims exist for a very limited set of circumstances. *Dremco, Inc. v. Diver*, No. 12 C 8703, 2013 WL 1873917, at *3 (N.D. Ill. May 3, 2013). The Seventh Circuit has stated that "the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Prods., Inc.,* 495 F.3d 466, 472 (7th Cir. 2007). Rather, "RICO 'is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Dremco, Inc.*, 2014 WL 3056838, at *2 (N.D. Ill. July 7, 2014) (quoting *Gamboa,* 457 F.3d at 705). "Congress enacted RICO to target long-term criminal activity, not as a means of resolving routine commercial disputes." *Kaye v. D'Amato,* 357 Fed. Appx. 706, 717 (7th Cir. 2009).

Turning to Lockhart's amended complaint, it is clear she has not alleged a viable RICO claim against any of the Defendants. The Court addresses the most glaring problems below, though it should not be viewed as an exhaustive list.

### a. The Enterprise

"A RICO complaint must identify the enterprise," *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995), defined as a "union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4). This

association must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial [sic] or consensual decision making," *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)).

Lockhart makes a blanket statement that the enterprise consists of the "Defendants Lindberg and Pilgrim acting by themselves or with other persons, or participated in the acts or practices with Defendants FAL, [Pilgrim Christakis], MERS and all other defendants named herein." R. 6 ¶ 165. She further alleges that "Defendants Lindberg and Pilgrim are the leaders, managers, organizers and controllers who influence the enterprise consisting of all other Defendants." R. 6 ¶ 179. But these allegations do not come close to satisfying the enterprise element. Lockhart has failed to identify with specificity the particular Defendants' roles in the organization, how the particular individuals are joined together, what orders come from the "top" of the structure, or how the orders are relayed to the other members. To put it simply, Lockhart's complaint is lacking allegations that describe the core of an organization—i.e., those necessary to satisfy the enterprise element. Lockhart does identify Lindberg and Pilgrim as the enterprise's leaders, but that alone is not enough. This is especially true considering that Lockhart's allegations supporting her RICO claim sound in fraud, which requires Lockhart to satisfy the Rule 9(b) pleading standard.

### b. Pattern of Racketeering Activity

To show a pattern, Lockhart must allege that a defendant committed at least two acts of racketeering activity in a ten-year period. 18 U.S.C. § 1961(5). Although two predicate acts are necessary, that alone is not sufficient to establish a pattern of racketeering activity. *H. J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *Corely v. Rosewood Care Ctr.*, 388 F.3d 990, 1002 (7th Cir. 2004). Furthermore, a civil RICO plaintiff must satisfy the "continuity plus relationship" test—i.e., "the predicate acts must be related to one another (relationship prong) and pose a threat of continued criminal activity (continuity prong)." *Midwest Grinding v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) (citing *H.J., Inc.,* 492 U.S. at 239); *Jennings*, 495 F.3d at 473.

"[I]n determining whether there is continuity, '[r]elevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.'" *Jennings*, 495 F.3d at 473 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)) (second alteration in *Jennings*). However, no one factor is necessarily determinative. *Jennings*, 495 F.3d at 473 (quoting *Morgan*, 804 F.2d at 976). Courts must evaluate the allegations on a case-by-case basis, looking to "the facts and circumstances of the particular case," *Jennings*, 495 F.3d at 473, while keeping in mind the goal of "achieving a natural and commonsense result, consistent with Congress's concern with long-term

criminal conduct," *id.* (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 673 (7th Cir. 2005)).

Lockhart alleges that "HSBC makes hundreds of billions of dollars annually[,] some of which is earned by illegally, fraudulently and discriminatorily foreclosing on homeowners across the United States using the same schemes used against Plaintiff and the thousands of other homeowners whose loans were the subject of the foreclosure review." R. 6 ¶ 34. Lockhart further allegations that, "[t]o [d]ate[,] the acts which are ongoing have lasted a substantial period of time and are pervasive as Defendants intend them to last indefinitely and to continue to victimize Plaintiff and on information and belief, thousands of other Illinois homeowners, attorneys and the judiciary by perpetuating their frauds and deceptions for profit." R. 6 ¶ 182. These allegations, however, do not establish a pattern of racketing activity.

Courts in this District have explained that "filing and prosecuting a [civil] complaint is not considered mail or wire fraud or a predicate act under RICO." *Carthan-Ragland v. Standard Bank & Trust,* No. 11 C 5864, 2012 WL 1658244, at *2 (N.D. Ill. May 11, 2012)); *see Harris Custom Builders, Inc. v. Hoffmeyer*, No. 90 C 0741, 1994 WL 329962, at *3-4 (N.D. Ill. July 7, 1994) (explaining that the "alleged scheme of filing lawsuits to enforce an illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO" (citing *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 266-67 (8th Cir. 1984)). In foreclosure cases, "plaintiffs cannot establish predicate acts of racketeering based on the false

statements allegedly contained in foreclosure complaints and supporting documents." *Drobny v. JP Morgan Chase Bank, N.A.*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013). Yet, that is exactly what Lockhart alleges in support of her RICO claims; she claims that the Defendants filed false forms supporting their mortgage foreclosure actions. That is insufficient to satisfy the pattern of activity element. *See generally Midwest Grinding*, 976 F.2d at 1024-25 ("[M]ail and wire fraud allegations are 'unique among predicate acts' because multiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity.' Consequently, we do 'not look favorably on many instances of mail and wire fraud to form a pattern.'" (quoting *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990); *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990))).

Furthermore, the only "schemes" or "racketeering activities" Lockhart attempts to explain in detail are those directed at her. The Seventh Circuit has explained that "a single alleged scheme targeted at one victim is not a 'pattern of racketeering activity' even if the alleged scheme requires several acts of mail and wire fraud to inflict the injury." *Slaney v. Amateur Athletic Fed'n.*, 244 F.3d 580, 599 (7th Cir. 2001); *see, e.g.*, *Ashland Oil v. Arnett*, 875 F.2d 1271, 1278-79 (7th Cir. 1989); *Lipin Enters. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986); *Drobny*, 929 F. Supp. 2d at 849. Lockhart's vague, conclusory statement that the conduct she complains of in her complaint has happened to "thousands of other homeowners," *see, e.g.*, R. 6 ¶ 182, lacks the specificity required under Rule 9 to demonstrate that the Defendants engaged in various schemes or activities directed at different individuals, or that

the alleged "racketeering acts [were] committed in a manner characterizing the [Defendants] as . . . person[s] who regularly commit such crimes." *Lipin Enters.*, 803 F.2d at 324. Accordingly, Lockhart's allegations fail to satisfy the pattern of racketeering activity element on this ground as well.

In sum, Counts I, II, and III are dismissed without prejudice. Lockhart is given leave to replead these counts should she be able to cure their deficiencies, being mindful that the deficiencies discussed in detail are not the only problems with her RICO claims. If Lockhart chooses to amend her complaint, she should be aware of this Court's recent order in *Dremco, Inc.*, 2014 WL 3056838, in which the Court granted the defendants' motion for sanctions because of an improperly filed RICO case.

## II. Counts IV, V, VI – Criminal Counts for Wire Fraud, Fraud & Deceit, and False Oaths

Lockhart alleges three criminal counts consisting of wire fraud under 18 U.S.C. § 1343, fraud and deceit under 18 U.S.C. § 1503, and false oaths under 18 U.S.C. § 1623(a). These allegations may be relevant to the RICO claims in Counts I, II, and III, but a plaintiff generally cannot bring claims for a violation of a criminal statute in a private civil cause of action. Indeed, the Supreme Court has explained that it "has rarely implied a private right of action under a criminal statute, and where it has done so[,] 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)).

Regarding the criminal statutes at issue here, other courts have already considered civil causes of action brought for a violation of them and in turn rejected. As one court in this District succinctly stated, "There is no implied private right of action for a violation of the mail and wire fraud statutes and therefore an independent claim for violations of those statutes is not viable." *Hu v. Cantwell*, 2008 WL 4200289, at *4 (N.D. Ill. Sept. 10, 2008) (citing *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407-08 (8th Cir. 1999); *Mondry v. Am. Family Mut. Ins. Co.*, No. 06-C-320-S, 2006 WL 2787867, at *5 (W.D. Wis. Sept.26, 2006); *Cole v. Forest Park Sch. Dist. 91*, No. 06 C 1087, 2006 WL 1735252, at *1 (N.D. Ill. June 19, 2006); *Foley v. Plumbers & Steamfitters Local No. 149*, 109 F. Supp. 2d 963, 970 (C.D. Ill. 2000)). The Court agrees that a private right of action does not flow from a violation of the criminal statutes at issue here, so Lockhart's claims in Counts IV, V, and VI are dismissed. This dismissal is with prejudice because any attempt to replead them would be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted . . . if it is clear that any amendment would be futile.").

## III.    Count VII – RESPA Violations

Count VII is a claim under RESPA, 12 U.S.C. § 2605(f), for damages arising from a lender's failure to comply with the statute. Section 2605(b)(1) provides that "each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). As particularly relevant here, Section 2605(b)(2)(A)

requires a "transferor of loan servicing" to give notice of any assignment of a loan to the borrower on the loan "not less than 15 days before the effective date of transfer of the servicing of the mortgage loan." Lockhart alleges in her amended complaint that she received legal documents stating that her mortgage had been assigned to a different entity but never received notice of the transfer. R. 6 ¶¶ 204-07. However, Lockhart concedes in her response brief that she did receive notice in August 2003 "that an assignment had been made and that the loan would be serviced by a new servicer, HFC." R. 54 at 15. Accordingly, Lockhart's claim is not that she did not receive *any* notice of the assignment; rather, she claims that she did not receive notice from the *transferor*, "Fieldstone Mortgage." Because Lockhart acknowledges that she received notice of the assignment from HFC III, *see* R. 61 at 9, Fieldstone Mortgage (as the transferor) is the only entity that could thus be liable for the alleged failure to provide notice. Fieldstone Mortgage is not a party to this action, so Lockhart's claim fails.

Even if Lockhart were given leave to replead the claim naming Fieldstone Mortgage as the liable party, her claim is time-barred. As the Defendants point out, Lockhart's claim in Count VII is subject to the three-year statute of limitations in 12 U.S.C. § 2614. If any party failed to provide Lockhart sufficient notice, that would have occurred in August 2003 when the party was required to provide notice as required by § 2605(b)(2)(A). The statute of limitations would have begun to run at that time, and Lockhart was thus required to file any failure to provide notice

claim by August 2006. That time has long since passed, so Count VII is dismissed with prejudice.

## IV. Count VIII – Fair Debt Collections Practices Act

Lockhart seeks relief in Count VIII for a violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692j. Section 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Similarly, Section 1692j(a) provides as follows:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

Lockhart alleges that the "Defendants served collection letters for debts they had no right to collect and deceived her into believing she owed a debt due to legal documents that were unlawful." R. 6 ¶ 212. More specifically, she alleges that FAL created:

> the false belief in [her] as a consumer of mortgage products that a debt was owed to an entity when in fact that entity was not owed money in violation of § 1692e including by threatening foreclosure action for a party when a debt was not owed to that party and threatening to take and taking legal action on behalf of that party that was fraudulent: and § 1692j by filing complaints and serving other papers falsely indicating a party is owed a debt that is not a real party in interest.

*Id.* ¶ 214.

The Defendants contend that Count VIII is time-barred. 15 U.S.C. § 1692k(d) requires any action seeking to enforce any liability must be brought "within one year from the date on which the violation occurs." The Court looks to "the specific

violations alleged" when determining "the date on which the violation occurs." *Jones v. U.S. Bank Nat. Ass'n,* No. 10 C 0008, 2011 WL 814901, at *3 (N.D. Ill. Feb 25, 2011) (citing 15 U.S.C. § 1692k(d)). However, "[w]here an [alleged] FDCPA violation arises out of a collections lawsuit, the Seventh Circuit has not decided when the FDCPA's statute of limitations begins to run, though the circuit courts have ruled on the issue agree that the clock starts when the allegedly wrongful litigation begins." *Judy v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 09 C 1226, 2010 WL 431484, at *3 (N.D. Ill. Jan. 29, 2010) (citing *Johnson v. Riddle,* 305 F.3d 1107, 1113 (10th Cir. 2002); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997)).

It is unquestioned that each of the three underlying state lawsuits was filed many years before Lockhart filed this suit. Based on that, all the claims in Count VIII against every Defendant, regardless of whether other elements are properly pled or whether the particular Defendants are even subject to the FDCPA, are barred.[7] To the extent Lockhart contends that the statute of limitation has not run

---

[7] Parties can only be liable for a violation of the FDCPA if they are "debt collectors." *See* 15 U.S.C. §§ 1692e and 1692f. Lockhart's amended complaint must therefore contain allegations that the Defendants "are in the business of collecting debt, that they regularly collect debts owed to others, or that they used names other than their own in attempting to collect a debt." *Cocroft v. HSBC Bank USA, N.A.*, No. 10 C 3408, 2012 WL 1378645, at *10 (N.D. Ill. Apr. 20, 2012) (citing *Goodloe v. Nat'l Wholesale Co.*, No. 03 C 7176, 2004 WL 1631728, at *13 (N.D. Ill. July 19, 2004). Even if the statute of limitations did not bar Lockhart's FDCPA claim, Lockhart's allegations make clear that HSBC, HFC III, MERS, MERSCORP, and Kaplan are not debt collectors, so they could not be liable under the FDCPA. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 537 (7th Cir. 2003) (distinguishing between debt collectors, who are subject to the FDCPA, and creditors, who are not). Whether the other law firms, Pilgrim Christakis and FAL, and their attorneys or employees could be considered debt collectors is not clear from the pleadings.

because of an ongoing, continuous pattern and course of conduct—e.g., sending erroneous collection letters and monthly statements—that argument is unavailing. It is difficult for the Court to precisely identify each and every "act" that Lockhart alleges to be a violation of the FDCPA due to Lockhart's generalized allegations and broad-sweeping conclusory statements. However, other courts addressing this issue have highlighted the "split of authority on the question of whether a continuing violation might extend the statute of limitations in a FDCPA case." *Woltring v. Specialized Loan Servicing, LLC*, No. 14-CV-222, 2014 WL 2708581, at *5 (E.D. Wis. June 16, 2014) (citing *Devlin v. Law Offices Howard Lee Schiff, P.C.*, No. 11-11902-JGD, 2012 WL 4469139, at *5 (D. Mass. Sept. 25, 2012)). Indeed, as the *Woltring* court recently noted, the only courts that have found that argument persuasive are located in districts outside the Seventh Circuit. *Woltring*, 2014 WL 2708581, at *5; *see also Grant v. Vision Fin. Servs., Inc.*, No. 11 C 8854, 2013 WL 1499004, at *3 (N.D. Ill. Apr. 11, 2013) ('[P]laintiff cites no authority for the proposition that an ongoing debt collection effort or an ongoing failure to validate the debt qualifies as a 'continuing violation' that would enable plaintiff to revive his time-barred claims, and we agree with our colleagues in this district who have ruled it does not."). That fact did not, however, prevent the *Woltring* court from acknowledging that the "continuing violation doctrine" may be viable as a "narrow and limited exception." *Id.*

This Court disagrees with the approach taken in *Woltring* and will instead follow the analysis as laid out in *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817

(N.D. Ill. 2013), a case in which Judge Feinerman rejected outright a plaintiff's reliance on the continuing violation doctrine in an FDCPA case. In determining whether the doctrine should apply, the court in *Hill* looked to the Seventh Circuit's interpretation of the continuing violation doctrine and applied it to the effect the doctrine would have on an FDCPA case:

> The Seventh Circuit has held with respect to that doctrine that "[t]he statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries" and that "[t]he office of the [continuing violation doctrine] is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). "It is thus a doctrine not about a continuing, but about a cumulative, violation." *Id.* So understood, the doctrine does not render LPS's alleged pre-limitations violations actionable. Those violations had already given rise to "an injury on which [a § 1692f(6)] suit can be brought" at the time they occurred, and to allow an FDCPA claim to proceed on those violations would effectively hold that the statute of limitations on those acts had been tolled by the later wrongs, contrary to the Seventh Circuit's understanding of the doctrine. *See Kovacs v. United States,* 614 F.3d 666, 676 (7th Cir. 2010) ("The continuing violation doctrine . . . does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.") (internal quotation marks omitted).

*Hill*, 946 F. Supp. 2d at 825 (alterations in *Hill*). The same analysis applies here. The purpose of the continuing violation doctrine is not to reset the statute of limitations every time an individual act occurs. Applying the continuing violation doctrine to an FDCPA claim like the one at issue here would not alter the significance of Lockhart's claimed injury nor would it affect the date on which Lockhart's underlying claim became ripe for adjudication. Instead, it would simply toll the statute of limitations through alleged later wrongs, which would not be a

proper basis for applying the doctrine. *See id.* Thus, the continuing violation doctrine is not applicable in this case.

In short, there is no dispute here that every named Defendant had participated in some respect in the events described in Lockhart's amended complaint by the time the third foreclosure action (Case Three) was filed in state court on September 7, 2007. Accordingly, at the *absolute* latest, the statute of limitations came and went on September 7, 2008, a year after Case Three was filed. Lockhart did not file this lawsuit until December 2013, so Lockhart's FDCPA claims are barred by 15 U.S.C. § 1692k(d).

## V.    Counts IX and X – Racial Discrimination

Lockhart alleges two counts of racial discrimination: one for a violation of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982; the other for a violation of the FHA, 42 U.S.C. § 3601.

### A.    Claims pursuant to 42 U.S.C. §§ 1981 and 1982

Section 1981 provides, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The Supreme Court has interpreted the section "as providing a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387,

393 (7th Cir. 2007) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-62 (1975)). Other portions of that section are also codified in Section 1982: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." "Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment and, particularly, to prohibit all racial discrimination, private and public, in the sale and rental of property. *Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1996) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968)). Lockhart alleges that the Defendants violated Sections 1981 and 1982 and "intentionally discriminated against [her] by charging her higher interest rates than those charged to similarly situated Caucasian mortgagees." R. 6 ¶ 218.

The Defendants contend that Lockhart's Civil Rights Act claims are barred by the applicable statute of limitations regardless of whether Lockhart has adequately pled the claims' required elements. The Seventh Circuit recently addressed the issue of Section 1981 claims brought against private actors and explained that they are "governed by [28 U.S.C. § 1658's] four-year statute of limitations." *Campbell v. Forest Preserve Dist.*, 752 F.3d 665, 668 (7th Cir. 2014) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)). Conversely, there is a two-year statute of limitations for a violation of Section 1982. *Brown v. Cnty. of Will*, No. 02 C 3165, 2005 WL 1138642, at *3 (N.D. Ill. May 9, 2005) (citing *Smith v. City of Chi. Heights*, 951 F.2d 834, 836-37 n.1 (7th Cir. 1992)). The clock

generally begins to run on a claim under either section "when the plaintiff[] knew or should have known of actionable discriminatory acts." *Honorable v. The Easy Life Real Estate Sys.*, 182 F.R.D. 553, 563 (N.D. Ill. 1998) (quoting *Burkes v. McDonald's Corp.*, No. 96 C 7093, 1997 WL 28300, at *4 (N.D. Ill. Jan. 21, 1997) (quoting *Bailey v. Northern Ind. Pub. Serv. Co.*, 910 F.2d 406, 412 (7th Cir. 1990))). An exception to that rule exists, however. A plaintiff may argue that the "continuing violation doctrine" applies, which would allow the plaintiff to "get relief for a time-barred act by linking it with an act that is within the limitations period," since the "discriminatory nature of an act may only become apparent in light of subsequent events." *Honorable*, 182 F.R.D. at 594.

In Lockhart's response to the Defendants' motions to dismiss, she does not address the Defendants' statute of limitations argument regarding Count IX. Even if she had, and further argued that the continuing violation doctrine applied, the same analysis as discussed above regarding her FDCPA claims would apply here. In sum, the continuing violation is inapplicable to this case, and the statute of limitations clock would have begun on September 7, 2007, the date on which Case Three was filed. Two years from that date is September 7, 2009; four years from that date is September 7, 2012. This case was not filed until December 2013, so Lockhart's claims in Count IX are time-barred.

### B.     Fair Housing Act Claim

The purpose of the FHA is "to provide, within constitutional limits, for fair housing throughout the United States." 42 U.S.C. § 3601. Lockhart alleges that the

Defendants violated the FHA by imposing different terms and conditions on her loan as a result of her race. R. 6 ¶ 222-23. The problem for Lockhart is that the claims for a violation of the FHA are also subject to a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States District Court or State Court not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice."). Accordingly, for the same reasons Counts VIII and IX of Lockhart's amended complaint are time-barred, Lockhart's claims in Count X are time-barred as well.

## VI.    Count XI – HOEPA; Count XIV – TILA

"TILA was intended to ensure that consumers are given 'meaningful disclosure of credit terms' and to protect consumers from unfair credit practices." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). In combination with HOEPA, "which was passed in 1994 as an amendment to TILA," TILA "requires creditors to provide certain financial disclosures, and failure to provide the required disclosures could give the borrower an extended right to rescind the transaction and/or the right to damages." *Green v. Chase Bank USA, NA*, No. 11 C 6345, 2012 WL 3961230, at *3 (N.D. Ill. Sept. 7, 2012) (citations omitted).

Lockhart's claims in Counts XI and XIV are similar. Count XI is a claim for a violation of HOEPA in which it appears Lockhart is only seeking rescission of the mortgage loan. R. 6 ¶¶ 225-30. Count XIV is a claim for damages under TILA

because, according to Lockhart, the Defendants received Lockhart's rescission notice but nevertheless ignored it, did not cancel the loan, and "failed to properly disclose the actual amount financed in violation of 15 U.S.C. § 1605, 12 C.F.R. § 226.4 and 12 C.F.R. § 226.18(d) and had misstated the 'Finance Charge' in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. 226.18(e) and 12 C.F.R. § 226.18(d)." *Id.* ¶ 249-50.

### A. Applicability of TILA & HOEPA

"As a threshold matter, TILA and HOEPA only apply to creditors and the assignees of that credit." *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 WL 1375363, at *4 (D. Md. March 26, 2010). TILA defines "creditor" as follows: one who "(1) regularly extends . . . consumer credit which is payable agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of indebtedness." 15 U.S.C. § 1602(g). The Defendant law firms (Pilgrim Christakis and FAL) and the Defendant attorneys or their employees (Jeffrey Pilgrim, Brady Pilgrim, Arnold G. Kaplan, and Steven C. Lindberg), do not fall under the definition of "creditors," nor could they based on their alleged conduct and roles in Lockhart's amended complaint. Thus, Lockhart cannot proceed with her TILA and HOEPA claims against them.

To the extent MERS and MERSCORP argue they should be dismissed because they are not creditors or assignees, the Court agrees in part, and the damage claim in Count XIV is dismissed against them. *See Stewart v. BAC Home Loans Servicing, LP*, No. 10 C 2033, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011)

(citing 15 U.S.C. §§ 1640, 1641(a); *Horton v. Country Mortg. Servs., Inc.*, No. 07 C

6530, 2010 WL 55902 (N.D. Ill. Jan. 4, 2010). As the *Stewart* court noted, however,

if rescission unwinds the entire transaction and the parties are to be returned to the

*status quo*, MERS and MERSCORP may be necessary parties for that to occur. *See*

*Stewart*, 2011 WL 862938, at *3. MERS and MERSCORP must therefore remain in

the case in the event Lockhart is able to prove she is entitled to rescission, as she

alleges in Count XI.[8]

### B.  Statute of Limitations

HSBC, HFC III, MERS, and MERSCORP contend that the claims should be

dismissed because they are barred by the applicable statute of limitations. The

TILA damage claim in Count XIV is subject to the one-year statute of limitations in

15 U.S.C. § 1640(e) while Lockhart's rescission request in Count XI is governed by

the three-year statute of repose in 15 U.S.C. § 1635(f). *See Estate of Davis v. Wells*

*Fargo Bank*, 633 F.3d 529, 532 (7th Cir. 2011). Lockhart's response to the motions

to dismiss does not address the statute of limitations argument directed at her

---

[8] The Court is unsure as to whether Lockhart can actually satisfy her tender
obligations should she demonstrate she is entitled to rescission. For purposes of the
motion to dismiss, Lockhart is not required to plead her ability to tender to the
value of the loan in the complaint. *Merritt v. Countrywide Fin. Corp.*, ___ F.3d ___,
No. 09-17678, 2014 WL 3451299, at *15 (9th Cir. July 16, 2014) (explaining that
"plaintiffs can state a claim for rescission under TILA without pleading that they
have tendered, or that they have the ability to tender, the value of their loan").
Nevertheless, that issue will need to be promptly addressed if Lockhart wishes to
rescind the loan because rescission is only possible if Lockhart can pay back the
money she received. Otherwise, the relief she seeks in Count XI is impossible. *See*
*Iroanyah v. Bank of Am.*, 753 F.3d 686, 692 (7th Cir. 2014) (explaining that "a
borrower's inability to satisfy his tender obligations may make rescission, even if
based on a TILA violation, impossible").

HOEPA and TILA claims. Nevertheless, it is clear that her TILA damage claim is time-barred. Section 1640(e) provides:

> Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 140(a) [15 USCS § 1650(a)]), 1 year from the date on which the first regular payment of principal is due under the loan.

In the event HSBC or HFC III failed to provide proper disclosure documents or act properly in the face of Lockhart's rescission request, which she claims was sent on May 1, 2006, R. 6. ¶ 230, the statute of limitations would have started to run *at least* in May 2006, if not earlier. Lockhart would have needed to file her TILA damage claims by May 2007, yet she did not file suit until 2013. Count XIV is dismissed in its entirety.

The rescission request pursuant to 15 U.S.C. § 1635(a) in Count XI is a different story. Section 1635(a) "provides that a consumer may rescind . . . a consumer credit transaction in which the creditor retains a security interest on the consumer's home." *Carmichael v. The Payment Crt, Inc.*, 336 F.3d 636, 643 (7th Cir. 2003) (citing 15 U.S.C. § 1635(a)). Generally, rescission must be requested within (1) three days of the date the parties consummated the transaction or (2) three days of the date the consumer received the required disclosure and rescission forms. *Id.* However, if the consumer is not provided with the required documents, a borrower may rescind the loan up to three years from the date the parties entered into the transaction. 15 U.S.C. § 1635(f); *see Carmichael, Inc.*, 336 F.3d at 643.

Lockhart contends she "never received notice required by law three or more days before closing, including cautionary language and specified information on the loan terms," R. 6 ¶ 229 (citing 12 C.F.R. § 226.32), so therefore, she had three years to give notice of her rescission request and to follow the procedures outlined in the statute. Taking Lockhart's allegations as true, she had three years to seek rescission of the loan (until May 29, 2003)—which she did on May 1, 2006—not necessarily three years to file suit to force the Defendants to rescind the loan. Indeed, the statute does not set forth a deadline for *filing suit* to enforce an obligor's right of rescission; it only provides a timeframe for pursuing rescission under 15 U.S.C. § 1635—i.e., the steps to provide notice of one's intent to seek rescission. *See Stewart*, 2011 WL 862938, at *3 ("[T]he Court is persuaded by the authority finding that a borrower may assert his rescission rights under § 1635(f) through notice to the creditor."); *In re Hunter*, 400 B.R. 651, 661-62 (N.D. Ill. 2009) (explaining that "[t]he three-year period limits only the consumer's right to rescind, not the consumer's right to seek judicial enforcement of the rescission") (internal citation omitted). Accordingly, Lockhart's claim for this Court to enforce her request to rescind the loan is not subject to the three-year statute of limitations (only her initial rescission request was), so Count XI is not time-barred.[9]

---

[9] It seems odd that any civil cause of action would not have a statute of limitations, but the parties have not pointed the Court to one governing *actions* to enforce one's rescission right in 15 U.S.C. § 1635(a)—provided, proper notice was previously given pursuant to § 1635(f)—and the Court has not found one.

### C. *Colorado River* Doctrine

Alternatively, the Defendants argue that the Court should dismiss the claim under the *Colorado River* doctrine. The *Colorado River* doctrine allows "a federal court [to] stay or dismiss a suit in exceptional circumstances where there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Freed v. Weiss*, 974 F. Supp. 2d 1135, 1137-38 (N.D. Ill. 2013) (quoting *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992)). The primary purpose of the doctrine is to "conserve both state and federal judicial resources and prevent inconsistent results." *Freed v. J.P. Morgan Chase Bank, N.A.*, ___ F.3d ___, Nos. 13-2339 & 13-2340, 2014 WL 2853551, at *3 (7th Cir. June 14, 2014). The first step in the inquiry is determining whether "the concurrent state and federal actions are actually parallel. Then, once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.'" *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006) (quoting *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)).

### 1. Parallel Actions

As the Defendants point out, Lockhart asserted similar counterclaims in the state court case, including claims under HOEPA, the Illinois Interest Act, and TILA. *See* R. 43 at 13-14. Moreover, the underlying state court action involves essentially the same parties who the Court has not yet dismissed Count XI against (i.e., HSBC and HFC III), the same property in Illinois, the same mortgage

agreement, the same conduct regarding that mortgage agreement, the same interest in the litigation, and the same remedies sought. *See generally Freed*, 2014 WL 2014 WL 2853551, at *4-6 (describing the relevant considerations in determining whether the federal action is parallel to those at issue in state court court). Lockhart's only counter argument to these facts is this case has race discrimination and RICO claims. The Court has already determined those claims are insufficiently pled, however, so there is no need to factor them into its decision at this time. Also, "paralleism under *Colorado River* requires only that there be 'a substantial likelihood,' not a certainty, 'that the [state court] litigation will dispose of all claims presented in the federal case.'" *Freed v. Weiss*, 974 F. Supp. 2d at 1145 (quoting *AAR Int'l., Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001)). The Court is therefore convinced the ongoing state court action is parallel to Lockhart's desired rescission relief in Count XI.

## 2. Exceptional Circumstances

The second issue requires the Court to determine whether exceptional circumstances justify the doctrine's application. The Seventh Circuit has set forth ten factors to consider in making that determination:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754 (quoting *Caminiti & Iatarola, Ltd.*, 962 F.2d at 701). Certain factors are overwhelmingly in favor of abstention in this case. For example: the Court here would be reviewing the exact same issues and conduct that the state court is reviewing (factor 3); state court jurisdiction was obtained many years ago (factor 4); the state court proceeding directly implicates and can protect Lockhart's asserted rights because Lockhart had the opportunity to file counterclaims and assert the same arguments there that she is making here (factor 6); the state court action has been ongoing for many years and has included amended complaints, summary judgment motions, and an appeal, *see* R. 6 ¶¶ 143-147 (factor 7); and finally, the claims are "vexatious or contrived" for purposes of the *Colorado River* doctrine because they closely track the state court claims and the majority have significant legal deficiencies that require them to be dismissed with prejudice (factor 10). Although the state has not assumed jurisdiction over the property (factor 1) and the federal forum will not inconvenience the parties (factor 2), these two factors alone do not carry much weight in light of the factors in favor of abstention. *See, e.g.*, *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011) ("The question whether the state litigation has reached an advanced stage turns not on the amount of discovery completed but on how far the state court has progressed toward a final resolution. And this court has held that, although the pendency of a state-court suit cannot alone justify abstention, that factor should be given more weight if the state case is already on appeal.") (internal citations omitted). The other factors (5, 8 and 9) also do not altogether favor either forum. Accordingly, the

"exceptional circumstances" necessary for abstention are present here with respect to Count XI.

The Defendants ask the Court to dismiss Count XI after determining the doctrine is applicable instead of imposing a stay, but the Seventh Circuit does not favor that approach. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (explaining that the *Colorado River* doctrine "ordinarily calls for a stay rather than dismissal when it applies"). This is especially true in this case because Lockhart should be provided with at least one opportunity to amend her RICO claim, though the Court is skeptical as to whether she can cure the deficiencies identified. The proper procedure is thus to stay the case in light of the fact no federal claims aside from Count XI currently remain and to allow Lockhart the opportunity to amend her complaint (should she seek to do so) once the underlying state proceedings have concluded. *See Rogers v. Desiderio,* 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion.").

## VII.  Counts XII and XIII – Illinois Interest Act

Lockhart further alleges two claims in violation of the Illinois Interest Act under 815 ILCS 205/4(2)(a) and 815 ILCS 205/5. R. 6 ¶¶ 231-46. 815 ILCS 205/4(2)(a) provides:

> Whenever the rate of interest exceeds 8% per annum on any written contract, agreement or bond for deed providing for the installment purchase of residential real estate, or on any loan secured by a

mortgage on residential real estate, it shall be unlawful to provide for a prepayment penalty or other charge for prepayment.

815 ILCS 205/5 provides:

No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.

As was the case with the HOEPA and TILA claims, these two sections directly relate to Lockhart's mortgage loan. The Defendant law firms (Pilgrim Christakis and FAL) and the Defendant attorneys and their employees (Jeffrey Pilgrim, Brady Pilgrim, Arnold G. Kaplan, and Steven C. Lindberg) had no role in Lockhart procuring the mortgage, did not lend Lockhart any money, and did not accept anything in return for any mortgage loan. It follows that they cannot be liable for Lockhart's claimed violations of the Illinois Interest Act. The same goes for MERS and MERSCORP, which are not required to be a part of the case regarding any claimed damages in Counts XII and XIII.

HSBC and HFC III are different. Based on Lockhart's allegations, they could be liable for a violation of the Illinois Interest Act. However, in the state court action, Lockhart sought and received leave to amend her complaint to file the exact same claims she sets forth in Counts XII and XIII. Those claims remain pending in the state court action, *see* R. 43 at 13-14, so any action this Court might take in regards to them would contravene the rationale behind the *Colorado River* doctrine. Accordingly, the same analysis for why the *Colorado River* doctrine applies to Count

XI with respect to HSBC and HFC III also applies to the claims against them in Counts XII and XIII.

## IX. Count XV – Punitive Damages

Count XV is a general claim for punitive damages. Lockhart provides no statutory or common law basis for this claim in her amended complaint, simply alleging she is entitled to punitive damages. The Court has dismissed each of the claims that could arguably support a claim for punitive damages, so Count XV is likewise dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss, R. 35, 38, 42, are granted in part and denied in part. Counts I, II, III, and XV are dismissed without prejudice. Counts IV, V, VI, VII, VIII, IX, X, and XIV are dismissed with prejudice. Count XI is dismissed with prejudice as to all Defendants except HSBC, HFC III, MERS, and MERSCORP. Counts XII and XIII are also dismissed with prejudice as to all Defendants except HSBC and HFC III. Due to the application of the *Colorado River* doctrine to Counts XI, XII, and XIII, the case will remain stayed until the state court litigation terminates. *See Rogers,* 58 F.3d at 302. At that time, any party may request the Court to lift the stay, and Lockhart may seek leave to amend her complaint if she chooses. The case is set for a status hearing on October 1, 2014, at 9:00 a.m., at which time the parties can provide the Court with an update on the status of the state court proceedings.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated:  August 1, 2014