```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

ELOISE LOCKHART,                 )   Docket No. 13 C 9323
                                 )
              Plaintiff,         )   Chicago, Illinois
                                 )   April 9, 2014
         v.                      )   9:11 a.m.
                                 )
HSBC FINANCE CORPORATION,        )
et al.,                          )
                                 )
              Defendants.        )


              TRANSCRIPT OF PROCEEDINGS - Status
           BEFORE THE HONORABLE THOMAS M. DURKIN


APPEARANCES:


Pro Se Plaintiff:      MS. ELOISE LOCKHART
                       1721 Hillcrest Drive
                       Irving, TX 75062


For the HSBC,          PILGRIM CHRISTAKIS LLP by
MERS and Pilgrim       MR. MATTHEW O. STROMQUIST
Christakis             53 W. Jackson Boulevard
Defendants:            Suite 1515
                       Chicago, IL 60604


For Defendant          COLLINS BARGIONE & VUCKOVICH by
Arnold Kaplan:         MS. KATHRYNE R. HAYES
                       One N. LaSalle Street
                       Suite 300
                       Chicago, IL 60602


Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
                       Official Court Reporter
                       219 S. Dearborn Street, Room 1432
                       Chicago, IL 60604
                       312.435.6053
                       laura_renke@ilnd.uscourts.gov
```

```
 1        (In open court.)
 2            THE COURT:  Okay.
 3            THE CLERK:  13 C 9323, Lockhart v. HSBC.
 4            THE COURT:  Good morning.
 5            MS. HAYES:  Good morning, your Honor.  Kathryne Hayes
 6   on behalf of defendant Arnold Kaplan.
 7            THE COURT:  Good morning.
 8            MS. LOCKHART:  Good morning, your Honor.  Eloise
 9   Lockhart, plaintiff.
10            THE COURT:  Ms. Lockhart.
11            MS. LOCKHART:  Yes.
12            MR. STROMQUIST:  Good morning, your Honor.  Matt
13   Stromquist on behalf of the HSBC defendants, the MERS
14   defendants, and the Pilgrim Christakis defendants.
15            THE COURT:  All right.  Does that mean everyone who is
16   a defendant in this case -- I'm trying to keep track of
17   everyone.  Is everyone represented, or is there someone who has
18   an attorney who is not here?
19            MS. LOCKHART:  Everyone who's been served is here,
20   your Honor, except that one defendant, Freedman, Anselmo &
21   Lindberg, has not yet been served.
22            THE COURT:  All right.  Not yet served.
23            Is there anyone then who has been served who is not
24   represented here in court today?  As far as the defendants
25   know, or the plaintiff.
```

1          MR. STROMQUIST:  I don't believe so.
2          THE COURT:  Ms. Lockhart, do you agree?
3          MS. LOCKHART:  I agree, your Honor.
4          THE COURT:  Okay.  All right.  Okay.
5          And what is the status of your service of Freedman,
6   Anselmo & Lindberg?  Do you expect to effect service on them,
7   or are you not going to be?
8          MS. LOCKHART:  The process server has indicated that
9   he's made three attempts, but no one there will accept on
10  behalf of the defendants.  And so I expect to be able to get
11  them served through certified mail or in the near future, your
12  Honor.
13         THE COURT:  All right.  Is that a law firm?
14         MS. LOCKHART:  Yes, it is a law firm, and the -- and
15  one of the partners in the law firm is also being sued.
16         THE COURT:  Was he served?
17         MS. LOCKHART:  Nobody would accept service on behalf
18  of --
19         THE COURT:  Oh.  So all right.  So there's an
20  individual defendant.  Besides the firm Freedman, Anselmo &
21  Lindberg, there's an individual defendant, Steven Lindberg.
22         MS. LOCKHART:  Right.
23         THE COURT:  So he has not been served either?
24         MS. LOCKHART:  No, your Honor.
25         THE COURT:  Okay.  All right.

1    All right. This is your first appearance in front of
2 me on the case. Normally what I would do, and I intend to do
3 it, will be set a briefing schedule on the motions to dismiss.
4 But I will allow the parties to talk about anything they want
5 to talk about involving the case without arguing the entirety
6 of the case, obviously.
7    Is there anything you want to tell me that's not
8 contained in the joint initial status report? Ms. Lockhart,
9 you can begin.
10    MS. LOCKHART: Well, your Honor, I served an entity
11 called HSBC Mortgage Corporation. And it was -- they were
12 served in less than their full name. The full name is
13 HSBC Mortgage Services, Incorporated.
14    Now, their agent for service accepted the summons and
15 later mailed it back to me claiming that I meant to serve
16 HSBC Mortgage USA and also claimed that they were not the agent
17 for HSBC Mortgage USA.
18    So what I'd like to do is have some explanation as to
19 why no answer has been filed on behalf of HSBC Mortgage
20 Services, Incorporated, since the firm which represents the
21 other HSBC entities knew, you know, about the service that was
22 made in less than the full name before they filed their
23 appearance.
24    THE COURT: Who's got HSBC?
25    MR. STROMQUIST: I do, your Honor.

1    THE COURT: Okay. Why don't -- there are a number of
2 confusing names --
3    MR. STROMQUIST: Yes, there are.
4    THE COURT: -- on this, either in the complaint or
5 just the way that HSBC is set up. So maybe you can shed some
6 light on this.
7    MR. STROMQUIST: Yeah. So there were three affidavits
8 of service on HSBC entities. Two of them I think are
9 undisputed: HSBC Finance Corporation, Household Finance
10 Corporation III. I think we can take those two off the table.
11    And then we're left with one other entity that was
12 served as HSBC Mortgage Corp. And we had filed our motion and
13 appearance on behalf of -- that entity doesn't exist.
14    THE COURT: Okay.
15    MR. STROMQUIST: So we had -- rather than going
16 through the rigmarole of, you know, filing a motion to dismiss
17 and everything, we just sort of entered in who we thought was
18 the party in interest, which is HSBC Mortgage Corporation USA.
19    If, indeed, Ms. Lockhart intended to serve someone
20 else, I don't think we have a problem with substituting that
21 party. But when we spoke before, I think she had wanted to add
22 it as a fourth entity rather than simply a third, which, you
23 know, obviously, there would have to be another -- another --
24    MS. LOCKHART: I --
25    THE COURT: Well, let me finish my questions of this

1  gentleman first.
2          HSBC Mortgage Corp. does not exist?
3          MR. STROMQUIST: As I understand it, yeah, that's --
4          THE COURT: All right. And HSBC Mortgage Corp. USA
5  does exist.
6          MR. STROMQUIST: Correct.
7          THE COURT: So HSBC Mortgage Corp. was the named
8  entity that the summons was addressed to.
9          MR. STROMQUIST: On the affidavit of service I have
10 here, it says, "Served verified complaint on HSBC Mortgage
11 Corp."
12         THE COURT: Okay. And HSBC Mortgage Corp. USA does
13 exist, and you entered an appearance on behalf of that entity.
14         MR. STROMQUIST: Yeah.
15         THE COURT: Okay. Ms. Lockhart, you were shaking your
16 head. What's --
17         MS. LOCKHART: Well, HSBC Mortgage USA, like I said,
18 they sent back the service, which they said was for
19 HSBC Mortgage USA, because they said that they had ceased doing
20 business in this area years ago so that they couldn't accept
21 service on behalf of HSB USA.
22         THE COURT: I don't know what HSBC USA is. Do you
23 mean HSBC Mortgage Corporation USA?
24         MS. LOCKHART: Yes.
25         THE COURT: All right. Well, that -- I don't -- you

1   said they returned service.  This gentleman just said they
2   accepted service, or at least they filed an appearance on
3   behalf of HSBC Mortgage Corp. USA.
4              So I'm confused.
5              MS. LOCKHART:  Your Honor, when the -- when the
6   waivers were sent, and I had a discussion with the attorney
7   from this gentleman's firm, I clarified that HSBC Mortgage
8   Services, Inc., was the entity that I was serving.  And then
9   after that, they filed an appearance on behalf of HSBC Mortgage
10  Corporation -- Mortgage USA.
11             So --
12             THE COURT:  So HSBC Mortgage Services?
13             MS. LOCKHART:  Right, Inc.
14             THE COURT:  Inc.  All right.
15             MR. STROMQUIST:  And if it's -- I'll just say, your
16  Honor, if it's a matter of substituting that party in for
17  HSBC Mortgage Corporation USA, I think we'd be fine with that.
18  The problem was adding yet a fourth HSBC entity when there's
19  only been three affidavits --
20             THE COURT:  Any objection to that?
21             MR. STROMQUIST:  -- of service.
22             MS. LOCKHART:  No.
23             THE COURT:  All right. Well, then HSBC Mortgage
24  Services, Inc., will be substituted in as the named plaintiff
25  and will be shown as having accepted service instead of

1   HSBC Mortgage Corporation USA.
2           MR. STROMQUIST:  And just -- and so USA is no longer a
3   named party to the case?
4           THE COURT:  That's my understanding.
5           Do you agree, Ms. Lockhart?
6           MS. LOCKHART:  Yes, your Honor.
7           THE COURT:  Okay.
8           MR. STROMQUIST:  And can we also stipulate that the
9   motions that have been filed on behalf of -- who had previously
10  been named USA --
11          THE COURT:  Yeah, that HSBC Mortgage Services, Inc.,
12  can be substituted in for that.
13          MR. STROMQUIST:  Okay.  Rather than refiling.
14          THE COURT:  Do you agree with that, Ms. Lockhart?
15          MS. LOCKHART:  Yes, your Honor.
16          THE COURT:  Okay.  Then that will be shown also.  So
17  we have --
18          MR. STROMQUIST:  There are three HSBC entities in the
19  case.
20          THE COURT:  And the three now that are named and that
21  you filed an appearance on are the three that are in the
22  complaint, or at least are the three entities at issue
23  regarding this property.  Is that correct?
24          MR. STROMQUIST:  Correct, yeah.
25          THE COURT:  Is that --

1        MS. LOCKHART:  That's correct, your Honor.

2        THE COURT:  Okay.  All right.

3        Is this a note on our -- on a case we have up now?

4    (Off-the-record discussion.)

5        THE COURT:  All right.  So what else -- I will set a
6  briefing schedule.  And I have some comments on the motions to
7  dismiss and on the complaint.

8        I'm concerned -- I will tell you, Ms. Lockhart, I've
9  read the motions to dismiss, and I'll give you all the time you
10 need to respond to them.  You're a sole practitioner, and these
11 folks all come from larger law firms, and I'll give you the
12 time you need.

13       But I am -- I will direct you to a case that I had in
14 front of me that -- it's called *Dremco v. Diver*, D-R-E-M-C-O *v.*
15 *Diver*, and the case number is 12 CV 8703.  It's here in the
16 Northern District.  And you can check some opinions I've
17 written in that case where I took a very dim view on people
18 suing -- people suing people or entities alleging civil
19 racketeering.

20       It's a statute; it exists.  It -- the fact that there
21 is such a thing as civil racketeering means you can bring it as
22 a civil lawsuit.

23       But I -- you'll note from the opinion I made there
24 that civil racketeering has been criticized many times by
25 courts as being abused.  It sometimes is very appropriate in

1  certain cases. I'm not going to prejudge whether it is here or
2  not.
3          But I -- I view civil racketeering when improperly
4  brought as a very serious, reputation-threatening type of a
5  lawsuit. When you bring that against lawyers or law firms or
6  even large corporate entities, racketeering has an implication
7  of -- it's often read and perceived by people as criminal
8  activity.
9          And not just criminal activity, but organized criminal
10 activity normally associated with the Chicago outfit or the mob
11 or the syndicate or however you want to characterize the
12 traditional notions of organized crime.
13         The statute, as I said, exists, and people bring it
14 often. But if it's not brought in good faith, I have in this
15 past -- in this Dremco case awarded fees to the party that
16 brought the motion to dismiss the racketeering count.
17         I -- it's the one statute I have a -- I have real
18 problems with if it's misused, and I think you need to -- and
19 you may have a very good-faith basis to bring it. I haven't
20 read your brief yet, and I merely read theirs.
21         But I ask you to tread lightly on this and be careful
22 about that and read my opinion in the other case because beyond
23 the cost of defending a lawsuit in racketeering, there is a
24 stigma that's attached to being called a racketeer as a
25 defendant in a civil racketeering case that is -- outweighs

1  the -- often outweighs the reality of the situation.  And I
2  view that as an abuse of a statute.
3          And I'm just telling you what I did in another case,
4  and I think you ought to be warned on that as you consider how
5  you respond to the motion to dismiss.
6          Okay.
7          MS. LOCKHART:  I'm sorry, your Honor.
8          THE COURT:  Go ahead.
9          MS. LOCKHART:  *Dremco v.*?
10         THE COURT:  *Diver*, D-I-V-E-R.
11         MS. LOCKHART:  D like David?
12         THE COURT:  Pardon me?
13         MS. LOCKHART:  D like David -I-V-E-R?
14         THE COURT:  Yes.
15         MS. LOCKHART:  Okay.
16         THE COURT:  But more importantly is the case number,
17  12 --
18         MS. LOCKHART:  12 CV 8703?
19         THE COURT:  8703.
20         MS. LOCKHART:  Okay.
21         THE COURT:  Yeah, and it's a Northern District --
22  obviously, a Northern District case.  And you'll -- if you go
23  to the docket sheet, you'll find some memorandum opinions where
24  I dismissed the racketeering complaint.
25         Now, there were -- I'm not going to get into that case

1  because it's still active, but there were particular facts on
2  that case, like there are on every case, that may distinguish
3  it from yours.  But in fairness to you, you should know up
4  front that's how I dealt with a situation in the past on
5  something like that where I was troubled by the stigma that's
6  attached to a racketeering complaint.
7         So anyway.  Okay.  How much time do you want to
8  respond to the various motions to dismiss?
9         MS. LOCKHART:  Let's see.  30 days, your Honor.
10         THE COURT:  That's fine.  And that's -- and I'll allow
11  you to respond to them -- since the motions to dismiss are all
12  pretty similar -- they all raise -- you know, primarily, beyond
13  the technical pleading issues of racketeering, they all raise
14  the *Colorado River* doctrine, which is a significant issue on
15  federal courts interfering with a state mortgage foreclosure
16  case.
17         And so I'll allow you to file a combined response.
18  And if you want more than 15 pages, I'll give you 25.
19         MS. LOCKHART:  Okay.
20         THE COURT:  You don't have to take all of them, but
21  you're free to if you want because I'd rather have a single
22  combined response --
23         MS. LOCKHART:  Thank you, your Honor.
24         THE COURT:  -- than have you do multiple repetitious
25  responses to sets of motions to dismiss that are all pretty

1    similar.
2             So I'll give you 25 pages, and I'll give you 30 days.
3             THE CLERK:  I think that takes us to May 9th.
4             THE COURT:  Is that enough time?
5             MS. LOCKHART:  Yes, your Honor.
6             THE COURT:  Okay.  May 9th it is.
7             And how much time do you want to reply?
8             MS. HAYES:  I'd ask for 21.  I believe that falls
9    around my vacation.
10            THE COURT:  Any objection?  Ms. Lockhart, any
11   objection to that?
12            MS. LOCKHART:  No, your Honor.
13            THE COURT:  Okay.  I'll give you 21 days.
14            Is that enough time for you too?
15            MR. STROMQUIST:  Yes, your Honor.
16            THE COURT:  Okay.  So 21 days to reply.
17            THE CLERK:  That's May 30th.
18            THE COURT:  And now there was a suggestion, and I
19   don't know whether it was agreed to, but the defendants wanted
20   to hold off on discovery until the motion to dismiss was
21   decided.  Do you agree with that or not?
22            MS. LOCKHART:  Yes, your Honor.
23            THE COURT:  You do?  Okay. We will not set a
24   discovery schedule at this point then.  We'll rule -- deal with
25   the motions to dismiss.  And then if they're granted, case

1  over.  If they're denied, then we get into a discovery schedule
2  and we'll set one that -- hopefully by agreement, we'll set a
3  discovery schedule.
4         I can't predict for you when I'll give you a ruling on
5  the motion to dismiss.  But why don't I have you come back
6  in -- so I don't lose track of the case.  I just know the other
7  cases I have piled up that are older than this with motions
8  pending for a longer period.  Why don't you come back in
9  mid-July.
10        What is the status of your foreclosure case?
11        MS. LOCKHART:  Your Honor, we were there on
12 March 18th.
13        THE COURT:  Yes.
14        MS. LOCKHART:  We were there on March 18th.
15        Back in 2011, I filed a motion for summary judgment.
16 And Household, the plaintiff, requested to reset the briefing
17 schedule so that they could initiate discovery and file a
18 countermotion for summary judgment.
19        THE COURT:  Okay.
20        MS. LOCKHART:  That was never done.
21        On March 18th, they indicated that they were still not
22 in a position to file their countermotion for summary judgment.
23        THE COURT:  March 18th of this year?
24        MS. LOCKHART:  That's right, your Honor.
25        THE COURT:  After the original motion was filed in

1    2011?

2            MS. LOCKHART:  That's right, your Honor.

3            THE COURT:  Okay.  Well, what is the --

4            MR. STROMQUIST:  And then there's a hearing before the
5    state court I believe in June --

6            MS. LOCKHART:  June 11th.

7            MR. STROMQUIST:  -- to deal with some contested
8    discovery issues.

9            THE COURT:  Okay.

10           MS. LOCKHART:  Well, June 11th, and then also to reset
11   the briefing schedule on my motion for summary judgment.

12           THE COURT:  Okay.  Well, I feel better about my
13   motions if a motion was filed in 2011 and hasn't been resolved
14   yet.  I feel much, much better about the state of my calendar
15   because I've got some old ones too.  But I wasn't a judge in
16   2011, so I'm -- none of them are quite that old.

17           But in fairness to the state judge, it sounds like
18   there's other issues.

19           MS. LOCKHART:  Well, they changed judges, your Honor.
20   This is a brand-new judge.

21           THE COURT:  Okay.

22           MS. LOCKHART:  And the old judge didn't leave her with
23   much information concerning the case.

24           THE COURT:  Okay.  Yeah.  This is not a criticism of
25   the judge; it's more an observation of timing of how far behind

1    I am on some motions, and this makes me feel better.
2              Let's give you a status in mid-July.
3              THE CLERK:  How is July 22nd?  Works?
4              MR. STROMQUIST:  Works for us.
5              THE CLERK:  Okay.
6              MS. HAYES:  That's fine.
7              THE COURT:  And, Ms. Lockhart, you're free to come up,
8    obviously, but if you want to participate by phone as you did
9    on the other motion we had, you're free to do so.
10             Mainly I want to know, is there any issue about
11   eviction or -- you're not living in the house that's the
12   subject of the lawsuit.
13             MS. LOCKHART:  No, your Honor.  I don't live in the
14   house.  I don't live in the state.
15             THE COURT:  I know you're in Texas.  But is the house
16   rented out, or is it --
17             MS. LOCKHART:  Yes, your Honor.
18             THE COURT:  Okay.  But is there any imminent issue of
19   eviction or foreclosure -- well, foreclosure put aside, but
20   eviction?
21             MS. LOCKHART:  No, your Honor.
22             THE COURT:  Okay.  Good.  Then I don't feel bad about
23   moving the status to July 22nd.  I just want to make sure
24   there's nothing where people are at risk of being put on the
25   street because I'm delaying on a ruling.

```
1              MS. LOCKHART:  No, your Honor.
2              THE COURT:  Okay.  Very good.
3              All right.  Anything else we should discuss today?
4              MS. HAYES:  No, your Honor, not on my part.
5              MR. STROMQUIST:  Not for us, your Honor.
6              THE COURT:  Ms. Lockhart?
7              MS. LOCKHART:  No, your Honor.
8              THE COURT:  Okay.  Good to see you all, and thank you.
9              MS. LOCKHART:  Okay.
10             MS. HAYES:  Thank you.
11             MR. STROMQUIST:  Thank you.
12             THE COURT:  Okay.
13             MS. LOCKHART:  I wanted to remind your Honor about us
14   graduating together and see if we had any memories.  No
15   memories?
16             THE COURT:  I don't, but I -- I can remember two or
17   three people in my class, and those are the people I've kept in
18   touch with since then.
19             MS. LOCKHART:  I'm having a hard time even remembering
20   the professors.
21             THE COURT:  Let's go off the record for a minute.
22             MS. LOCKHART:  Yeah.
23          (Off-the-record discussion.)
24          (Concluded at 9:29 a.m.)
25
```

1       C E R T I F I C A T E

2       I certify that the foregoing is a correct transcript of the

3       record of proceedings in the above-entitled matter.

4

5       /s/ LAURA R. RENKE                    August 25, 2014
        LAURA R. RENKE, CSR, RDR, CRR
6       Official Court Reporter