**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELOISE LOCKHART | ) |
| | ) FILED: June 23, 2014 |
| Plaintiff, | ) 13CV 9323 |
| | ) JUDGE DURKIN |
| v. | ) MAG. JUDGE GILBERT |
| | ) |
| HSBC FINANCE CORPORATION, et al., | |
| Defendants | |

### PLAINTIFFS' LOCAL RULE 56.1(A)(3) STATEMENT OF MATERIAL FACTS IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Plaintiff Eloise Lockhart, states the following as her statement of material facts as to which there is no genuine issue, made pursuant to Local Rule 56.1(a)(3).

## I     PARTIES

1. Plaintiff Eloise Lockhart is a 58 year old person residing in Irving Texas. She is the Defendant and Counter-Plaintiff in a foreclosure action filed by defendants in September 2007, which is pending in state court.

2. Defendant Freedman Anselmo Lindberg & Rappe ("FALR") or "FAL" is a law firm located at West Diehl Road in Naperville Illinois. The law firm is defined as a collection which regularly collects debts which were originally owed to others after they have allegedly become delinquent. (AC ¶ 36),

3. Defendant Lindberg is a managing partner in FAL the law firm, and one of the leaders of an enterprise consisting of all of the other defendants.

4. Defendant Lindberg, acting with defendant Jeffrey Pilgrim, (and the other defendants) directed, controlled or participated in the collection of unlawful debt in violation of RICO.

5. Defendant Steven C. Lindberg acted as co- leader of an enterprise which was an association in fact existing separate and apart from defendants law practice, through which the defendants pursued( and continue to pursue) the collection of unlawful debt in violation of RICO.

## II     JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sect. 1331 because the claims herein arise under the laws of the United States, pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964 (c) because the claims herein seek recovery for violations of 18 U.S.C. § 1961(6) and pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. This court is a proper venue for this action under 28 U.S.C. S 1391(a) (2) because a substantial part of the acts and omissions giving rise to this dispute occurred within this judicial district and division.

8. Defendants FAL and attorney Steven C. Lindberg were served by certified mail, restricted delivery, to David J. Anselmo, who is their agent for service of process.

9. Defendants had until December 1, 2014 to Answer or otherwise plead but have not done so.

10. On December 10, 2014, plaintiff filed a motion asking the court to approve alternative service. The court denied the motion as moot based on plaintiffs' allegations that the defendants had been served, through their agent for service of process, in compliance with F.R.C.P. 4.

11. Defendants are being served with copies of this Statement of Material Facts and the Motion for Summary Judgment, which is being filed.

### III   STATEMENT OF FACTS

12. On May, 26, 2005, August 5, 2005 and on September 7, 2007, Freedman Anselmo Lindberg & Rappe filed foreclosure law suits against Plaintiff in state court alleging initially (May 2005 and August 2005) that MERS/Household Finance 111 was the original lender and holder of the mortgage note which plaintiff executed on May 29, 2003 in favor of Fieldstone Mortgage.

13. The Mortgage and Note attached to the foreclosure actions provided otherwise, stating that the lender and holder of the Note was Fieldstone Mortgage.

14. The foreclosure complaints further alleged that the mortgage was recorded with the Recorder of Deeds for Cook County. However, the mortgage which plaintiff executed in favor of Fieldstone has never been recorded with the recorder of Deeds for Cook County, Illinois or anywhere else.

15. In July 2005, Lockhart filed a verified Answer to the complaint denying under oath that the mortgage was recorded with the recorder of deeds, that HFC III was the lender or owner of the mortgage and Note, denying the material allegations as to execution (as to both lots) and swearing that she was not in default on her mortgage obligation as alleged in the complaint.

16. On about August 5, 2005, FAL filed the second foreclosure complaint (05 CH 13290). The mortgage was still not recorded with the Recorder and the complaint still did not document how or when HFC III allegedly came into ownership of the Mortgage and Note as no assignment was attached to the foreclosure complaint.

17. On May 1, 2006, while the second foreclosure was pending, Lockhart notified FALR (as attorney for the purported holder on the Mortgage and Note and Fieldstone Mortgage Corp.) that she was rescinding the loan because Fieldstone violated the Truth in Lending Act by failing to properly disclose the actual amount financed as required by 15 U.S.C. § 1605(a) and C.F.R. §§ 226.45 and 226.18(d) and misstating the Annual Percentage Rate and Finance Charge in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R.S 226.189(e) and C.F.R. § 226.18 (d).AC PP 250 - 251.

18. The charge for recording the mortgage should have been included in the finance charge as the money was not used to record the mortgage. Because it was not, the Finance Charge was understated. Misstating

(under stating) the finance charge gave plaintiff the right to rescind the loan for a period of up to three years. 15 U.S.C. § 1635.

19. The right to rescind for up to three years, runs against the original lender and against any assignee of the loan. 15 U.S.C. § 1641 (c). In this case the assignee is alleged to be HFC III so that Lockhart has a valid claim for damages against HFC III, the purported assignee, and is not limited to proceeding against Fieldstone Mortgage which declared bankruptcy and is no longer in existence.

20. In addition to the violations noted in the rescission request, the lender violated 12 C.F.R. § 226.19, part of Federal Reserve Board Regulation Z by failing to disclose the variable rate feature of the loan (or providing the Consumer Handbook on Adjustable Rate Mortgages required by § 226.19 (b) and failing to disclose that the annual percentage rate ( 9.1%) in an irregular transaction, as defined in § 226.22, varied by more than ¼ of 1 percentage point from the 8.7% rate which was promised at the time of the application.

21. Additionally FAL admitted that Plaintiff was provided with only one federal Notice of Right to Cancel in a form that she could keep, instead of the two required by § 226.23 (b)(1).

22. Any of the above violations trigger a three year right to cancel the loan whether or not the loan had been transferred from the original lender.

23. Under 15 U.S.C. § 1635, and as more specifically set out by the Federal Reserve Board in Regulation Z to the Truth in Lending Act, 12 C.F.R. §

226.23(d)(1), HFC III had 20 days after receipt of the notice of rescission to return any property transferred in connection with the loan and "take any action necessary to reflect the termination of the security interest," § 226.23(d)(2) and if and when that had been completed, the consumer " shall tender the money or property to the creditor."

24. HFC III, through their attorney FAL received the notice of rescission on May 1, 2006 which is within three years of the May 29, 2003 closing. FAL through Attorney Douglas Oliver acting in conspiracy with the purported assignees, waited until June 1, 2006 and falsely advised Lockhart that she had only three days to cancel the loan, claiming that her right to cancel expired in June 2003.

25. The foreclosure actions filed by FAL on behalf of HFC III and MERS constitute collection of unlawful debt in violation of RICO. § 1961(6) defines unlawful debt as follows.

> "unlawful debt means a debt (A) …which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate".

26. The mortgage debt was unenforceable because of the lenders violations of the Illinois Interest Act which is a state law relating to usury, and also because the servicer (HSBC Mortgage Services) violated the Interest Act in servicing the loan. 815 ILCS 205/4(2)(a) of the Interest Act provides. ¶¶ 238-244 AC.

"Whenever the rate of interest exceeds 8% per annum on any written contract, agreement or bond for deed providing for the installment purchase of real estate, or on any loan secured by a mortgage on residential real estate, it shall be unlawful to provide for a prepayment penalty."

27. The interest rate on Plaintiff's loan was 9.1% and provided for a prepayment penalty and provided that certain other charges which are considered prepayment penalties, had to be prepaid. ¶ 234 ,

28. The mortgage loan was a HOEPA loan as points and fees exceeded 8% of the total loan amount (15 U.S.C. § 1602(aa), which means that any assignee is liable for any claims which could be brought against the original lender. AC ¶ 226

29. According to ¶ 248 of Plaintiff's complaint and federal regulations "rescission is automatic upon the consumers' notice". 12 C.F.R. § 226.23 (d)(1). "When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge."

30. On January 13, 2015 the U.S. Supreme Court ruled that a borrower exercises the right to rescind by providing written notice to the lender within three years of the loan transaction. *See Jesinoski v. Countrywide Loans, Inc. 2015 WL 144681 (Jan.13, 2015).*

31. The Court found that no law suit was required and that a borrower's written notice of the intent to rescind is complete and effective upon proper delivery of a rescission notice.

32. The court expressly rejected the common law rule which was advanced by the mortgage lenders, that a rescinding party must return what he or she received before rescission can be effective holding that § 1635 of the TILA is a statutory right which did not adopt the common law equitable requirement of tender.

33. Because the loan was rescinded, defendants' subsequent foreclosure law suit and other collection activities, including monthly collection notices, amount to collection of unlawful debt and conspiracy to collect unlawful debt in violation of RICO. Once the loan was rescinded, the amount of interest or principal which was enforceable was 0%.

34. Additionally the loan is covered by the Home Ownership Equity Protection Act ("HOEPA") which means that any assignee is liable for any claims which could be brought against the original lender.

35. The state foreclosure actions instituted by FAL on behalf of HFC/MERS constitute collection of unlawful debt in violation of RICO.

36. Defendants FAL and Steven C. Lindberg violated RICO by conspiring with HFC III and GRCB to collect an unlawful debt in violation of RICO.

37. Defendants FAL violated the FDCPA § 812 by creating the false belief in Plaintiff as a consumer of mortgage products that a debt was owed to an

entity when in fact that entity was not owed money in violation of § 1692 (e) including by threatening foreclosure action for a party when a debt was not owed to that party and threatening to take and taking legal action on behalf of that party that was fraudulent.

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2014, I filed the attached **PLAINTIFF'S LOCAL RULE 56.1(A)(3) STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court, which should automatically send a copy to all counsel of record.

Respectfully submitted,

/s/Eloise Lockhart

Plaintiff