**TRANSCRIBED FROM DIGITAL RECORDING.**

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
ELOISE LOCKHART,                )
            Plaintiff,          )
        vs.                     )
HSBC FINANCE CORPORATION, HSBC  )  Case No. 13 CV 9323
MORTGAGE CORP., HOUSEHOLD       )
FINANCE CORP. III, MERSCORP,    )  Chicago, Illinois
INC., MERS, FREEDMAN ANSELMO    )  November 20, 2014
LINDBERG, LLC, STEVEN C.        )  1:01 PM
LINDBERG, JANE & JOHN DOES      )
1-10 AS AGENTS AND/OR           )
EMPLOYEES RELATED TO HSBC,      )
FREEDMAN ANSELMO LINDBERG, AND  )
MERSCORP, INC., BRADY PILGRIM   )
CHRISTAKIS BELL, LLP, JEFFREY   )
PILGRIM, JANE AND JOHN DOES     )
1-10 AS AGENTS AND/OR           )
EMPLOYEES RELATED TO            )
DEFENDANTS BRADY PILGRIM        )
CHRISTAKIS BELL, AND ARNOLD G.  )
KAPLAN,                         )
                                )
            Defendants.         )
```

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MAGISTRATE JUDGE JEFFREY T. GILBERT

APPEARANCES:

Pro se Plaintiff:          MS. ELOISE LOCKHART (via telephone)
                           1721 Hillcrest Drive
                           Irving, Texas 75062


For the Defendants:        PILGRIM CHRISTAKIS LLP
HSBC, MERS,                BY:  MR. JASON A. JULIEN
Brady Pilgrim,             321 North Clark Street
Other Defendants:          26th Floor
                           Chicago, IL 60654

```
 1   APPEARANCES: (Continued.)

 2   For the Defendant         COLLINS BARGIONE & VUCKOVICH
     Arnold Kaplan:            BY:  MS. KATHRYNE R. HAYES
 3                             One North LaSalle Street Suite 300
                               Chicago, IL 60602
 4

 5   Transcriber:
                       SANDRA M. TENNIS, CSR, RMR, FCRR
 6                         Official Court Reporter
                         United States District Court
 7              219 South Dearborn Street, Suite 2260
                         Chicago, Illinois  60604
 8                      Telephone:  (312) 554-8244
                      Sandra_Tennis@ilnd.uscourts.gov
 9

10
            **PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
11             NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
                       PORTIONS UNINTELLIGIBLE AND INAUDIBLE.
12
```

1          THE CLERK:  13 CV 9323, Lockhart v. HSBC Financial
2  Corporation, et al, for status.
3          THE COURT:  Good afternoon.  In the courtroom, do
4  you want to state your appearances for the record.
5          MS. HAYES:  Good afternoon, your Honor.  Kathryn
6  Hayes for the defendant, Arnold Kaplan.
7          MR. DIZDAREVIC:  Good afternoon, your Honor.
8  Sulejman Dizdarevic for HSBC, Brady Pilgrim, MERS and a few
9  other defendants.
10         THE COURT:  And on the phone, do we have
11 Ms. Lockhart on the phone?
12         MS. LOCKHART:  Yes, your Honor.  Good afternoon.
13 Eloise Lockhart, plaintiff, pro se.
14         THE COURT:  Okay.  Good afternoon, everybody.
15 Well, I reviewed your settlement correspondence, and I think
16 it's fair to say that you're pretty much light years apart.
17 I mean, unless I'm missing something, I don't really think it
18 makes sense to bring everybody together for an in-person
19 settlement conference here.  You know, I remember, when I
20 went back and I looked at the docket, as to how you
21 originally came here, this was kind of an organically
22 generated suggestion by Judge Durkin when you were in a
23 status hearing in front of him, maybe anybody interested
24 coming down and talking settlement.  And I think everybody
25 said yes.  But if the types of settlements that you're all

1  envisioning are accurately summarized in your letters, which
2  I have no reason to doubt, I'm not a miracle worker.  I don't
3  know that I can do anything, and I think you're just where
4  you are.  Defendants, you disagree?
5          MR. DIZDAREVIC:  If I may add, your Honor.  I think
6  the -- the -- it appears on the paper that we are somewhat
7  apart on because -- and this -- because Ms. Lockhart -- this
8  is Sulejman Dizdarevic speaking.  Because this is --
9  Ms. Lockhart has -- misunderstands that a lot of her claims,
10 almost all of her claims, are non-existent.  Most of them are
11 dismissed with prejudice.  And the RICO claims are dismissed
12 without prejudice.  The court issued -- expressed the --
13 Judge Durkin expressed his opinion about re-pleading those --
14 most of those claims.  So if we take those claims out and if
15 we look at what's left, I don't think that we are far apart.
16 What's left is HOEPA rescission claim and two interest --
17 Illinois Interest Act claims.
18          And so if we take that and consider what we have, I
19 think that we can work something out, especially -- I mean,
20 from our perspective we have our claims against --
21 foreclosure claims against Ms. Lockhart.  We have
22 Ms. Lockhart's counterclaims against us.  We have a loan
23 principal balance, money that's owed, the property.  So I
24 think we have multiple pieces that we can work together and
25 try to work something out, assuming that Ms. Lockhart is --

1  comes with an open mind and is willing to -- to try to
2  resolve this.
3       So that's -- that's how I look at the case.
4  Putting the numbers themselves a little bit aside.
5       THE COURT:  Well, I guess we need to hear from
6  Ms. Lockhart on -- on that.  Ms. Lockhart, do you agree with
7  counsel's view of the world; or do you have a different view
8  of the world?
9       MS. LOCKHART:  I have a different view of the
10 world, your Honor.  I don't believe that the claims that I'm
11 pressing are nonexistent.  But I would like to come together,
12 if that's possible, so --
13      THE COURT:  Well, you're asking for four-and-a-half
14 million dollars; right?
15      MS. LOCKHART:  Right.
16      THE COURT:  And you keep your home; right?
17      MS. LOCKHART:  Yes, your Honor.
18      THE COURT:  Okay.  And the Kaplan defendants have
19 offered nothing.  They don't think you have a claim against
20 them for a lot of the reasons that defense counsel for HSBC
21 said.  And HSBC is saying, we'd like to foreclose on your
22 home, take it away; right?
23      MR. DIZDAREVIC:  True, your Honor, but --
24      THE COURT:  And that -- and that ends the state
25 court litigation, too; right?

1     MR. DIZDAREVIC: If I may -- yes, your Honor. If I
2  may add one thing. Our counterproposal is in light of
3  Ms. Lockhart's demand. But if -- if she is -- if she is
4  willing to -- to re-review the status of the federal
5  pleadings, we are also willing to take a different position.
6  But I have to be clear, we are not in a position, or will we
7  ever be in a position, to -- to pay any money even close to
8  what's being suggested here. But we have other options, and
9  I think they're very reasonable.
10    THE COURT: Well, look, I mean, you proceed from
11 the assumption that Judge Durkin's order dismissing a whole
12 bunch of Ms. Lockhart's claims is the end -- you know, is the
13 end. And I'm hearing from -- I guess I'm intuiting or
14 inferring from what Ms. Lockhart is saying is, you know, she
15 doesn't -- she would -- if she thinks she disagrees with the
16 rulings, that she could appeal them, you know what I mean?
17 And if she appeals them and she gets them overturned, then
18 her claims are back.
19    She has got certain claims that have been stayed.
20 I've seen the back-and-forth on those in terms of what you
21 think they're worth. She disagrees. And you're currently
22 involved in the state court litigation which could result in
23 foreclosure on Ms. Lockhart's house; or if she continues to
24 fight it, A, she'll stay in the home as long as it takes for
25 that case to be resolved; or, B, maybe -- you know, maybe she

1    succeeds in a way that she think she can succeed.

2        I mean, I -- I -- I view these, even with your
3    statement that, you know, well, your offer, your settlement
4    letter, is in response to her four-and-a-half million
5    dollars, you're never going to get any close to that, you
6    didn't put any money on the table.  And so, you know, her
7    four-and-a-half million dollars probably stays unless she
8    sees whether you're offering her any money.

9        But putting aside that, I don't think she is
10   willing to consent to foreclosure on the house.  Right,
11   Ms. Lockhart?

12       MS. LOCKHART:  That's right, your Honor.

13       THE COURT:  I mean, I don't -- I mean, look, I'm as
14   optimistic as the next person, but these are about as far
15   away in terms of being anywhere close to the same universe as
16   I've seen settlement demands.  I had Ms. Lockhart here in
17   person.  So I heard what she has to say in person.  It's
18   possible Ms. Lockhart is simply wrong about the merits of her
19   claims or her ability to overturn anything that the District
20   Court did on appeal, or her -- or and/or her ability to
21   succeed in the state court case.

22       But I'm not sensing -- I mean, Ms. Lockhart, you
23   said, well, we'd like to -- you'd like to get together and
24   resolve it.  In your world, though, you know, in your -- you
25   resolve this by getting paid money by the bank and continuing

1   to stay in your house; right?
2           MS. LOCKHART: Yes, your Honor.
3           THE COURT: And that's not up your alley; right?
4   That's not on the table from the bank; right? Counsel is
5   shaking his head saying no.
6           MR. DIZDAREVIC: No, it's not. No, it's not.
7           THE COURT: And on -- in the Kaplan case, I think
8   your position is, we don't have any active claims against us;
9   right?
10          MS. HAYES: We don't. We were hoping for maybe
11  some more information on what Ms. Lockhart might seek to
12  plead in the future, but we didn't receive any information
13  like that.
14          THE COURT: And -- and they're not -- nobody on the
15  defense side is anywhere close to writing -- nobody on the
16  defense side right now, at least from their written position,
17  is anywhere close to writing checks. No where close to
18  writing checks in the magnitude that you're talking about.
19  And the bank in particular is not -- is not going to
20  negotiate that you stay in the house; right?
21          MR. DIZDAREVIC: I did not say that.
22          THE COURT: Uh-huh.
23          MR. DIZDAREVIC: What I said is that there are
24  options available. But with respect to Ms. Lockhart, her
25  position is I hope that she is -- she is making this position

```
 1   as, in an attempt to bargain, I guess.  But it's really more
 2   aggressive on -- at the bargaining table, or at least in her
 3   letter.  But I hope that's not her true intention or what
 4   true -- or how she wants to resolve --
 5              THE COURT:  Well, I have -- I have people sitting
 6   here, at least some counsel or parties sitting here for the
 7   next settlement -- for a settlement conference I have at
 8   1:30.
 9              I'm going to ask this gentleman to leave.  I'm
10   sorry, but I just -- I'm going to ask the -- I'm going to go
11   off the record.  I'm going to ask the plaintiff on the phone
12   something about her monetary demand.
13              UNIDENTIFIED VOICE:  Understood.
14              THE COURT:  So I just want it to be confidential.
15              UNIDENTIFIED VOICE:  Judge, I was of the impression
16   that we were supposed to be here at 1:00.  I didn't realize
17   it was 1:30.  So we'll be back.  It's County of Will.
18              THE COURT:  Yeah, I know.  It's Hassan.
19              UNIDENTIFIED VOICE:  I think it's 1:30; right?
20              THE COURT:  Yeah.  Okay.  You know what, I have a
21   conference room that we're going to be in.  It's at the end
22   of the hall on the right.  So if you go there, you can make
23   yourself at home.
24              UNIDENTIFIED VOICE:  We will do that.  Thank you.
25              THE COURT:  Let's go -- I want to go off the
```

```
 1   record, if everybody agrees, because I'm going to ask
 2   Ms. Lockhart if she wants to reduce her monetary demand.  And
 3   if she did, and if based on that the defendant wants -- at
 4   least the bank wanted to respond, then you could respond or
 5   send her a letter, or something.  But I want to see where
 6   we're going with this.  Okay?  Is everybody in agreement with
 7   doing that so that numbers are not on the record?
 8              MS. HAYES:  Yes.
 9              MR. DIZDAREVIC:  If I may, one more, while we are
10   on the record, if I can ask one more question.  If the
11   parties are in agreement that your Honor can speak to us
12   individually ex-parte in the context of the settlement
13   discussions, if -- if, you know, to see if they can agree to
14   that on the record; and then maybe we can have a little more
15   productive conversation.
16              THE COURT:  Well, and I take it from the bank,
17   would you agree that I could talk to you separately without
18   anybody else present about settlement?
19              MR. DIZDAREVIC:  Yes, your Honor.
20              THE COURT:  What about for Kaplan?
21              MS. HAYES:  I agree.
22              THE COURT:  Ms. Lockhart, do you agree with that,
23   too?
24              MS. LOCKHART:  Yes, your Honor.
25              THE COURT:  Okay.  Good.  All right.  Well, then,
```

1  in the future, maybe we could do that.  Let's go off the
2  record, if everybody wants to figure out where we are.
3           (Discussion had off the record.)
4           THE COURT:  Okay.  So we're back on the record.
5  I've had an opportunity to speak to everybody.  Well, not
6  Kaplan -- not the Kaplan lawyers, but, and I think -- and
7  because I have another settlement conference, as you guys in
8  the courtroom know, we've got all this technology tied up.
9  As long as everybody is willing to let me talk to everybody
10 separately, I think I should do that.  Because I'm the new
11 kid on the block here, and I don't completely understand
12 everything everybody is saying.  So I need to -- I mean, I
13 read the letters, but I only read them once.  And when I saw
14 what the distance was, I didn't delve into everything to see
15 whether or not I thought there was some creative way to deal
16 with this.
17          So, you know, I've spoken to Ms. Lockhart.  She is
18 willing to talk to me.  I have her phone number.  And I can
19 talk to you guys for a second when she goes off the phone
20 here.  But I've got all your numbers.  You're --
21 Mr. Dizdarevic is here.  You're the guy to talk to?  And
22 then -- and then Ms. Hayes' number, I've got your number
23 here, too.
24          Okay.  So I think I'd like to reread this stuff,
25 reread Judge Durkin's opinion.  And then -- I don't see --

1  because nothing is happening in the federal case right now,
2  given where, you know, Judge Durkin's last opinions on
3  this -- the forum in the state court. And I understand that,
4  but I have limited ability to affect any of that. I do
5  understand that if we're going to try to get a global
6  resolution, Mr. Olson will have to be involved. But as long
7  as everybody is willing to let me talk to them, give me a
8  little time, I can't tell you when; but I'd like to look at
9  this and pick up the phone and see whether or not there is
10 some traction to begin. I want to talk to you real
11 quickly --
12          MS. HAYES: Sure.
13          THE COURT: -- here, Ms. Hayes, before you leave.
14 But then I've got to do this other settlement conference.
15 Okay?
16          MS. HAYES: Okay.
17          THE COURT: All right. Ms. Lockhart, have a good
18 rest of the day and a holiday, if I don't talk to you before
19 then. And I'm going to try to get back to you and counsel
20 here and see if there is traction to be earned here, to be
21 gained here. If not, you know, maybe some creativity.
22          MS. LOCKHART: Okay. Thank you very much, your
23 Honor.
24          THE COURT: Because it sounds to me like everybody
25 would like to resolve it, it's just a question of how; right?

```
 1            MS. LOCKHART:  Right.
 2            THE COURT:  Yeah.  Other than that, Mrs. Lincoln,
 3   how did you like the play; right?  Other than that little
 4   hiccup with the --
 5            MS. LOCKHART:  Yeah.
 6            THE COURT:  Okay.  So the devil will be in the
 7   details, but I'm not giving up right yet.  Okay?
 8            MS. LOCKHART:  Thank you, your Honor.
 9            THE COURT:  Thanks.  We're going to disconnect now.
10        (Which were all the proceedings heard.)
11                          CERTIFICATE
12        I certify that the foregoing is a correct transcript
13   from the digital recording of proceedings in the
14   above-entitled matter to the best of my ability, given the
15   limitations of using a digital-recording system.
16
17   /s/Sandra M. Tennis                August 21, 2015
18   _____        _____
     Sandra M. Tennis                   Date
19   Official Court Reporter
```