```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   ELOISE LOCKHART,                )   Docket No. 13 C 9323
                                     )
 4              Plaintiff,            )   Chicago, Illinois
                                     )   December 7, 2015
 5        v.                          )   9:07 a.m.
                                     )
 6   HSBC FINANCE CORPORATION,       )
     et al.,                         )
 7                                   )
                Defendants.           )
 8

 9             TRANSCRIPT OF PROCEEDINGS - Status
            BEFORE THE HONORABLE THOMAS M. DURKIN
10
     APPEARANCES:
11
     Pro Se Plaintiff:    MS. ELOISE LOCKHART
12                        1721 Hillcrest Drive
                          Irving, TX 75062
13

14   For the HSBC,        PILGRIM CHRISTAKIS LLP by
     MERS and Pilgrim     MR. JASON A. JULIEN
15   Christakis           53 W. Jackson Boulevard, Suite 1515
     Defendants:          Chicago, IL 60604
16

17   For Defendants       ANSELMO LINDBERG OLIVER PC by
     Anselmo Lindberg     MR. ROBERT J. DEISINGER
18   Oliver and           1771 W. Diehl Road, Suite 120
     Steven Lindberg:     Naperville, IL 60563
19

20   For Defendant        COLLINS BARGIONE & VUCKOVICH by
     Arnold Kaplan:       MS. KATHRYNE R. HAYES
21                        One N. LaSalle Street, Suite 300
                          Chicago, IL 60602
22

23   Court Reporter:      LAURA R. RENKE, CSR, RDR, CRR
                          Official Court Reporter
24                        219 S. Dearborn Street, Room 1432
                          Chicago, IL 60604
25                        312.435.6053
                          laura_renke@ilnd.uscourts.gov
```

```
1        (In open court.)
2             THE CLERK:  13 C 9323, Lockhart v. HSBC Finance.
3             MR. JULIEN:  Good morning, your Honor.  Jason Julien
4    for HSBC and MERS.
5             THE COURT:  Good morning.
6             MS. HAYES:  Good morning, your Honor.  Kathryne Hayes
7    for defendant Arnold Kaplan.
8             MR. DEISINGER:  Robert Deisinger for the Lindberg
9    defendants.
10            MS. LOCKHART:  Good morning, your Honor.  Eloise
11   Lockhart, plaintiff.
12            THE COURT:  All right.  There was something happening
13   in state court on November 19th.  What happened, if anything?
14            MR. JULIEN:  We briefed cross-motions for summary
15   judgment.  So Ms. Lockhart moved for summary judgment, and we
16   moved for summary judgment on Ms. Lockhart's Interest Act
17   counterclaim, the Illinois Interest Act, and her counterclaim
18   to quiet title and rescind mortgage.
19            Ms. Lockhart's motion for summary judgment was denied.
20   Our motion for summary judgment on the Interest Act
21   counterclaim was granted, and our motion for summary judgment
22   on the counterclaim to quiet title was also granted, and
23   rescind mortgage.
24            So at this point the only issue remaining in the state
25   court case is our foreclosure complaint, and we're currently
```

1 assessing how that ruling impacts the issues in this case and
2 if there's anything in our foreclosure complaint that would
3 impact her HOEPA rescission claim in this case.
4       But looking at the ruling that we got, I believe her
5 Interest Act claims in this case would be no longer an issue
6 based on the way the judge ruled.
7       THE COURT: All right. Ms. Lockhart, what do you say
8 in response to that?
9       MS. LOCKHART: I agree with what he's indicating.
10       But they also filed a motion for unclean hands, which
11 was also granted. So -- and the Interest Act claim, which I
12 filed in the state court, wasn't the same -- wasn't under the
13 same section as the Interest Act claim that I filed in this
14 court. So I don't -- you know, I don't see how that would have
15 any impact on the Interest Act claims that I felt should be
16 pending here.
17       So mostly I agree with what he said.
18       THE COURT: All right. Anything from the other
19 parties?
20       MS. HAYES: No, your Honor.
21       MR. DEISINGER: I'm curious if the orders entered by
22 the Court had findings that there was no cause to delay
23 enforcement or appeal the orders, especially on -- as far as
24 the judgment on the counterclaim.
25       MR. JULIEN: I'm not sure --

1  MS. LOCKHART: There -- there wasn't any 403 or --
2  they're all interlocutory at this point. Before December 19th,
3  I'll file a motion for reconsideration. If that's denied, I'll
4  ask for another interlocutory appeal regarding the -- the
5  motion that's been filed.
6  THE COURT: All right. Well, I stayed the action in
7  this case because I think there's too much going on in the
8  state court, in my opinion. I know, Ms. Lockhart, you may
9  disagree, but I felt that the state court action, which in some
10 ways may have some preclusive effect on at least parts of this
11 case, ought to run its course before we go further on this
12 case. It's a very-active-at-this-stage state court case.
13 And I haven't heard anything to change my mind, not if
14 you're taking motions to reconsider and presumably going to
15 take an appeal from some of the rulings of the state court
16 judge.
17 It is a 2013 case. What do the parties say? Is there
18 a -- do you want to go forward on this case? I believe that
19 there ought to be some final disposition in state court, a
20 nonappealable one or one that has been appealed and either
21 affirmed and reversed, so that if there is preclusive effect
22 that -- any of those rulings have preclusive effect on any
23 aspects of this case, we are not litigating two things -- two
24 of the same things in two different courts.
25 If there's a reason I should change my mind, say so

1 now.

2      MS. LOCKHART:  Your Honor, the state court case
3 doesn't involve the same parties.  In the state court case, the
4 attorneys for Pilgrim Christakis -- they are attorneys in the
5 state court case; here they are defendants.  So they don't --

6      THE COURT:  One of the defendants.

7      MS. LOCKHART:  I'm sorry.  What?

8      THE COURT:  One of the defendants here.

9 HSBC is a defendant here, correct?

10     MR. JULIEN:  That's correct, your Honor.

11     THE COURT:  In the federal court case.  I thought it
12 was.

13     MS. LOCKHART:  No, HFC III is a defendant in the state
14 case, not HSBC.

15     THE COURT:  But they are the same company, in essence,
16 aren't they?

17     MS. LOCKHART:  I think -- I don't know.  I've never --
18 I've never seen their statement.

19     But the -- but HFC III I think is a wholly owned
20 subsidiary of HSBC.

21     THE COURT:  All right. Well, which makes them
22 essentially the same party for purposes of -- they're going to
23 argue, I expect, that any rulings by the state court that at
24 least go in their favor have preclusive effect here.

25     So I -- although some of the parties are different,

1 the key party in a foreclosure action is the party that holds
2 the mortgage that is -- or the party that made the loan that's
3 seeking to foreclose.
4     MS. LOCKHART: I'm sorry, your Honor. I didn't hear
5 what you said about the parties who own -- who what?
6     THE COURT: Well, the key party in any foreclosure
7 case is the party that's seeking the foreclosure. That's one
8 of the defendants in this case, isn't it?
9     MR. JULIEN: That's correct, your Honor. And so the
10 rescission claim is to rescind the mortgage. And you can only
11 do that against the party that owns the mortgage.
12     THE COURT: Right.
13     MS. LOCKHART: Or the -- well, okay.
14     THE COURT: Go ahead. What?
15     MS. LOCKHART: That's okay, your Honor.
16     THE COURT: All right. Well, is there any reason not
17 to continue the stay in this case? I'll ask first the
18 defendants. What's your view?
19     MR. JULIEN: I believe it should be continued shortly.
20 I think you said there might be some preclusive effect. I
21 don't know if we're going to continue to litigate in state
22 court for a long time, but I think maybe we should set a brief
23 status to kind of see what happens in December in terms of
24 things Ms. Lockhart's filed. Maybe we should come back in
25 January or February. But I think it should be continued at

1  least in the short term.
2          THE COURT: All right. First I'll ask the other
3  defendants. What do you think?
4          MS. HAYES: That sounds fine to me. We're not a party
5  to the state court case, so --
6          THE COURT: Right.
7          MS. HAYES: -- just continuing on.
8          MR. DEISINGER: I think that perhaps a stay of a
9  longer term of this action might be more efficient for all
10 parties involved. I think that the -- the reason I asked about
11 the state court Rule 304(a) finding is because as long as the
12 state court's orders are interlocutory, the question of
13 preclusion is up in the air.
14         So until there's a final order in the state court case
15 that might resolve some of the issues in this case, I don't
16 believe there's any reason to discontinue the stay in this
17 case.
18         THE COURT: All right. Ms. Lockhart?
19         MS. LOCKHART: Your Honor, I asked to come in when
20 your clerk called and said that perhaps there was no reason to
21 come in to this hearing today because I want to discuss another
22 issue.
23         THE COURT: All right. Well, first issue is whether
24 the stay should be continued. Do you object to that?
25         MS. LOCKHART: Yes.

1     THE COURT:  All right.  And the basis of the
2  objection?
3     MS. LOCKHART:  Well, defendants claim that they are
4  litigating the state court case, and they're not litigating the
5  state court foreclosure case.
6     The state court foreclosure case was filed in
7  September 2007.  They filed one motion, and it was directed
8  toward my counterclaims.  Initially they did file a motion for
9  summary judgment on their foreclosure case, which they
10 withdrew.  So they haven't filed anything to affirmatively move
11 the foreclosure case since two thousand -- January of 2008.
12    And I don't think that they will because they are
13 aware that they have no lien.  Once they have no lien, they
14 can't -- they don't have the jurisdiction to proceed on this
15 foreclosure case, which is why they're not proceeding on it.
16    So I -- even though he claims that one day sometime in
17 the future he's going to file something, I don't believe it
18 because there's no indication because he never -- he never has.
19 And he knows he can't win.
20    THE COURT:  Mr. Julien, are you going to file a
21 summary judgment motion?
22    MR. JULIEN:  We are going to file something in the
23 state court case, Judge, on --
24    THE COURT:  Something.  What's --
25    MR. JULIEN:  -- on our --

| | |
|---|---|
| 1 | THE COURT: What's the -- |
| 2 | MR. JULIEN: -- on our foreclosure complaint -- |
| 3 | THE COURT: What are -- |
| 4 | MR. JULIEN: -- on our -- |
| 5 | THE COURT: -- you going to file? |
| 6 | MR. JULIEN: -- complaint to foreclose. |
| 7 | That's what we're currently assessing. |
| 8 | THE COURT: What are your choices? |
| 9 | MR. JULIEN: Well, do we move for summary judgment on |
| 10 | our foreclosure complaint is an option which we're currently |
| 11 | assessing. It's just a matter of this came down the Thursday |
| 12 | before Thanksgiving. We really haven't had a chance to touch |
| 13 | base with HSBC, but we're trying to decide how best and how |
| 14 | effectively to wrap the case up. And that's why I asked for a |
| 15 | more short-term continuation. |
| 16 | THE COURT: All right. |
| 17 | MR. JULIEN: I think when we come back -- if we were |
| 18 | to come back in January or February, we'd have something |
| 19 | concrete to say this is how we're moving forward. In state |
| 20 | court, I don't think we're going to just be sitting around or |
| 21 | letting it -- you know, the state court case lie dormant. |
| 22 | And I'd just note for the record, Judge, the reason we |
| 23 | have not been able to move forward with the foreclosure |
| 24 | complaint up until now is because we've been defending other |
| 25 | things that -- we couldn't move forward with the foreclosure |

```
 1    complaint, for example, if there's a rescission/quiet title
 2    counterclaim.  You know, that is impeding us moving for summary
 3    judgment on the foreclosure complaint.
 4             THE COURT:  All right.
 5             MR. JULIEN:  Now that that's out of the way, we're
 6    assessing how we move forward.
 7             THE COURT:  All right.
 8             Ms. Lockhart, you were going to raise something else?
 9             MS. LOCKHART:  Yes, your Honor.  I want to discuss
10    455(a).
11             THE COURT:  455(a).  You'll have to educate me on what
12    you mean.
13             MS. LOCKHART:  Disqualification, your Honor.
14             THE COURT:  Oh.  Go ahead.
15             MS. LOCKHART:  Pilgrim Christakis --
16             THE COURT:  Yes.
17             MS. LOCKHART:  -- apparently were former partners of
18    Arnstein & Lehr.  And your Honor has a brother, James Durkin --
19             THE COURT:  I have --
20             MS. LOCKHART:  -- who is a partner --
21             THE COURT:  -- a brother named James Durkin,
22    absolutely.
23             MS. LOCKHART:  -- who is a partner in Arnstein & Lehr.
24             THE COURT:  He is an income partner.
25             MS. LOCKHART:  I'm sorry. What?
```

1  THE COURT: He's an income partner. He's not an
2 equity partner. He doesn't share in the profits.
3  Were he an equity partner and were Arnstein & Lehr a
4 set of lawyers in this case, I would disqualify myself or --
5 from hearing the case.
6  The rules are if it's an income partner and he's not
7 involved in any representation of the case, has nothing to do
8 with it, doesn't share in the profits of the firm, then it's
9 not -- at least not mandatory for me to disqualify myself.
10  Arnstein's not in this case, are they?
11  MS. LOCKHART: No. But Pilgrim and Christakis and the
12 other person who was sued, Grady, they were all partners of
13 Arnstein -- with Arnstein & Lehr.
14  THE COURT: They are now?
15  MS. LOCKHART: I don't believe so. I don't believe
16 they are now.
17  THE COURT: When were they? I was un -- Pilgrim
18 Christakis is a firm that -- they've tried a pro bono case in
19 front of me. I was never aware they had anything to do with
20 Arnstein & Lehr. Was it some prior iteration of the firm?
21 Were they part of Arnstein?
22  MR. JULIEN: Two of the partners at Pilgrim Christakis
23 were partners at Arnstein & Lehr, but they left in at least the
24 middle 2000s.
25  MS. LOCKHART: No, they left in 2009 when they

1  filed -- when they -- when they came in on the state
2  foreclosure case.
3         THE COURT:  All right.  So they --
4         MS. LOCKHART:  And there's three of the partners.  It
5  was Grady, Pilgrim, and Christakis.
6         THE COURT:  They left Arnstein in 2009?
7         MR. JULIEN:  That's not correct.  So the firm Pilgrim
8  Christakis was formed in 2008, and that's why I said they left
9  in at least the middle 2000s.  But so at the very minimum,
10 we've been a firm since 2008, your Honor, separate from
11 Arnstein & Lehr.
12        THE COURT:  All right.  Well, I don't know when my
13 brother started, but I don't think it was -- I don't think he
14 was even there in 2008.  But it doesn't matter.  He's an income
15 partner there, and he has nothing to do with foreclosure cases.
16 That's not the work he does.
17        So if that's the basis -- if you --
18        MS. LOCKHART:  And that's --
19        THE COURT:  -- want to file a motion, go ahead.  But
20 I'm telling you it's -- the automatic disqualification that
21 would apply were he -- were he -- were his firm in front of me
22 and were he an equity partner or if he had involvement in the
23 case, then I'd just disqualify myself.  But that's not --
24 that's not these set of facts.  If there's something more, put
25 it in a written motion; I'll be happy to review it.

1                MS. LOCKHART:  Okay, your Honor.
2                THE COURT:  But --
3                MS. LOCKHART:  And --
4                THE COURT:  -- feel free to file it.
5                MS. LOCKHART:  Okay.
6                THE COURT:  But I think the rules of disqualification
7     probably don't apply to this set of facts.
8                MS. LOCKHART:  Okay.
9                And regarding Pilgrim and Christakis, once the case
10    was filed and once you issued your August 5th, 2014, opinion, I
11    called Ms. Christakis in order to indicate to her that I wanted
12    to file a motion for reconsideration.
13               And she wrote back.  And I'd like to read what she
14    wrote back for the record.
15               THE COURT:  Go ahead.
16               MS. LOCKHART:  Okay.  "We received your yesterday's
17    voice mail concerning your intention to file a motion for
18    reconsideration of Judge Durkin's August 1st ruling under
19    Rule 59(e) and 60(b).  While you did not indicate the specific
20    basis for your request for reconsideration, Judge Durkin's
21    opinion accurately interprets the applicable law and clearly
22    provides a legal basis for the dismissal of each of your
23    claims.  As a result, we do not see any basis that would allow
24    you to prevail on a motion to reconsider.  Therefore, we do not
25    agree to your request to object to the motion to reconsider."

1             But here's the part that I'd like noted:
2    "Additionally, we hereby reassert our intention to seek
3    sanctions for your continuous prosecution of the case.  As you
4    recall, back in April, the Court issued a stern warning
5    regarding the validity of your claims in the complaint and
6    invited you to withdraw your claims.  We respectfully request
7    that you stop the prosecution of the case.  Otherwise, we will
8    have no choice but to file a motion with the Court to ask for
9    sanctions, including the award of attorneys' fees incurred in
10   this case.  If you have no" -- and that's all I want to read
11   about.
12             THE COURT:  Okay.
13             MS. LOCKHART:  But my problem is that the firm,
14   Pilgrim Christakis, indicated that you issued a warning to me.
15   I didn't pay any attention to it when they wrote this to me
16   because I didn't think you were issuing any warning.  I didn't
17   think that at that point, you know, when we were at the
18   motion-to-dismiss stage that you had come to the conclusion, as
19   they indicate here, that my claims were meritless.
20             So, you know, that's basically what I want to know.
21   If -- if, you know, what they say is accurate, then, you know,
22   I'm thinking that maybe a motion for a -- you know, maybe I
23   will file a motion under 455 if they've already -- if -- if
24   what they say is accurate.
25             THE COURT:  Well, what they say about an order of mine

1  is kind of irrelevant. The order speaks for itself. You can
2  interpret it the way you want to; they can interpret it the way
3  they want to. I don't have the order in front of me. I can't
4  recall it, quite frankly. But if they mischaracterized it, so
5  be it. If they didn't, so be it. Carefully review the order.
6      If their characterization of it differs from yours,
7  that's just -- that's the way life -- that's the way things go.
8  Lawyers interpret judges' orders entirely from their own
9  perspective.
10      MS. LOCKHART: And, your Honor --
11      THE COURT: But if you want to file a motion to recuse
12  based on that --
13      MS. LOCKHART: No, the reason that I didn't pay any
14  attention to it, because I didn't know at that time -- because
15  you hadn't disclosed it -- that Pilgrim Christakis had -- that
16  you were in -- you were considering them for an award. Okay?
17      THE COURT: Well, I think --
18      MS. LOCKHART: So I would not have --
19      THE COURT: -- I disclosed that. I don't know when I
20  disclosed it to you, but I -- when I nominated their firm --
21  their firm was randomly assigned to represent a defendant,
22  which is kind of unusual in a civil rights case, but because of
23  the peculiar facts of the case. He was a Chicago police
24  officer who had been terminated from his job for unlawful use
25  of force, and he was the defendant in a civil case.

1           So I asked the clerk's office to randomly assign
2   someone from the trial bar to represent him; their firm did.
3   They did an exceptional job, so I nominated them, as I do every
4   year, at least one firm or individual, for an award from the
5   district court, the bar association.
6           Most judges here nominate a firm or an individual or
7   several firms and individuals.  I think I disclosed that.  So
8   if --
9           MS. LOCKHART:  Yes, your Honor.  I'm --
10          THE COURT:  Go ahead.
11          MS. LOCKHART:  -- I'm not saying you didn't disclose
12  it.  But it was disclosed in 2014.
13          THE COURT:  Okay.
14          MS. LOCKHART:  It was disclosed in 2015, this year,
15  after you issued the order on August 1st in 2014.
16          THE COURT:  Well, you'd have to check the docket on
17  the case.  But it's very possible I hadn't made up my mind --
18  I'm not even sure they had -- we had had the trial on that
19  case.  We may have, but I'm not sure if we did.  I'm certain I
20  hadn't made up my mind because I usually wait until the end of
21  the year before I nominate someone because it's supposed to
22  represent who I believe performed in an exemplary way during
23  the year.
24          So bottom line is, look.  If you're uncomfortable with
25  all that, put it in a motion.  I'll read it over.  I'll look at

1  it straight up, and if I agree with it, there is some form
2  of -- unless there's an actual conflict, I'll look and see if
3  there's an appearance of a conflict.  And if I think there is,
4  I'll see if the parties want to waive it or if they don't.
5        If I don't believe there's an appearance of a conflict
6  given the disclosures I've made throughout this case, I'll deny
7  your motion.  But you're free to make it.
8        MS. LOCKHART:  Yes, sir.
9        THE COURT:  Okay.  Anything else on that issue?
10       MS. LOCKHART:  Your Honor, I don't believe I was up
11 here when this gentleman indicated who he was appearing on
12 behalf of.  So if he --
13       THE COURT:  Oh, go ahead again.
14       MS. LOCKHART:  -- could just tell me that.
15       MR. DEISINGER:  Robert Deisinger for the Lindberg
16 defendants.
17       THE COURT:  All right.
18       MS. LOCKHART:  And, your Honor, you gave me until
19 August 31st to serve one of the partners in his firm.  I served
20 him on August 31st, but he hasn't filed any appearance as yet.
21       MR. DEISINGER:  My appearance is of record.  I don't
22 understand.
23       MS. LOCKHART:  No, I don't mean for the firm; I mean
24 for the partner.
25       MR. DEISINGER:  Yeah, I have an appearance on file for

1  Steven Lindberg and for the firm.

2  MS. LOCKHART: Yeah, but when you put that appearance
3  on file, you said that you weren't submitting to the
4  jurisdiction of the Court. You were only filing your
5  appearance for purposes of filing your motion to set aside the
6  default.

7  THE COURT: Yeah. Well, that happens. People will
8  file appearances on behalf of people without having -- so that
9  you cannot later contend that the filing of the appearance
10 waives any jurisdictional defects that may exist.

11 That's fine. You've got somebody who is on record
12 representing that defendant. I've stayed this case. If I lift
13 the stay, we're going to have to deal with issues on vacating
14 defaults and things like that. But right now I've stayed the
15 case.

16 I'll continue this till late January. I'll continue
17 the stay till that time. HSBC or HFC III, whatever -- whoever
18 party you are representing in the state court that's going to
19 be proceeding with foreclosure, you're going to have to tell me
20 if you're going forward on the foreclosure or not. If you're
21 not, I'm going to lift the stay. This case has been pending
22 since 2013, and it's not right to keep it going. We'll proceed
23 on two tracks because the track in state court isn't moving
24 fast enough.

25 But I'll give you till late January to, as you said,

1   evaluate the most recent orders of the state court, and that
2   will be what we'll do.  So I'll give you a date in late
3   January.
4           THE CLERK:  For a status, we could do the 28th.
5           THE COURT:  How does that work for everybody?
6           MR. JULIEN:  That's fine for HSBC.
7           THE COURT:  Ms. Lockhart?
8           MS. LOCKHART:  I'm sorry.  I didn't hear.
9           THE COURT:  January 28th.
10          MS. LOCKHART:  I'd rather come back later than
11  January.
12          THE COURT:  That's fine.  I know you travel from out
13  of town.  You can participate by phone.  But if you want to be
14  here live, we'll give you a date that works for you.  I'm
15  confident the defendants won't object.
16          THE CLERK:  What works for you?
17          MS. LOCKHART:  Mid-February.
18          THE CLERK:  Mid-February?
19          THE COURT:  All right.
20          THE CLERK:  You want to come back maybe on the 16th or
21  17th?
22          MS. LOCKHART:  That's fine, either one of them.
23          THE CLERK:  Is that all right, the 16th then, for
24  everybody?
25          MR. JULIEN:  That works for HSBC.

1  MR. DEISINGER: If I might just have leave to appear
2  by telephone. My wife is due with a baby on the 17th.
3  THE COURT: That's fine. Contact my courtroom deputy
4  the day before and give her a number, and you can participate
5  by phone.
6  MR. DEISINGER: Thank you, Judge.
7  THE COURT: All right. We'll do it till then. The
8  stay will continue till then, but I would like answers to the
9  questions I've raised.
10  And, Ms. Lockhart, if you want to file your
11  disqualification motion, feel free to do so before that date.
12  I can either rule orally at that time or -- on the 16th, or, if
13  I think necessary, I'll ask for responses from the defendants.
14  MS. LOCKHART: Thank you, your Honor.
15  THE COURT: Okay. Thank you all.
16  MR. DEISINGER: Thank you, Judge.
17  MR. JULIEN: Thank you.
18  MS. HAYES: Thank you.
19  (Concluded at 9:28 a.m.)
20                    C E R T I F I C A T E
21  I certify that the foregoing is a correct transcript of the
22  record of proceedings in the above-entitled matter.
23
24  */s/ LAURA R. RENKE*                              *December 15, 2015*
    LAURA R. RENKE, CSR, RDR, CRR
25  Official Court Reporter