**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELOISE LOCKHART, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:13-cv-09323 |
| v. | ) |
| | ) Judge Thomas M. Durkin |
| HSBC FINANCE CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

**PILGRIM CHRISTAKIS DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Pilgrim Christakis LLP, f/k/a Grady Pilgrim Christakis Bell LLP, ("Pilgrim Christakis") and Jeffrey Pilgrim ("Mr. Pilgrim") (collectively, "Pilgrim Christakis Defendants"), by counsel, respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("Complaint"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Now that the Illinois Appellate Court has affirmed the foreclosure judgment and the judgment against her on her state court counterclaims,[1] Plaintiff Eloise Lockhart ("Plaintiff"), an attorney, returns to this Court to try to relitigate her claims. In doing so, she reasserts six claims against the Pilgrim Christakis Defendants—three of which this Court

---

[1] The foreclose action captioned *Household Finance Corporation III v. Eloise Lockhart, et al.*, was pending in the Circuit Court of Cook County, Illinois, as Case No. 07 CH 24236. The Illinois Appellate Court affirmed judgment in HFC's favor on all its claims and Plaintiff's counterclaims *sub nom. Wilmington Sav. Fund, FSB v. Lockhart*, No. 1-18-1180, 2019 WL 1462223 (Ill. App. Ct. Mar. 29, 2019). This Court may consider documents filed in state court without converting this Motion into a motion for summary judgment because (1) the state court case is central to Plaintiff's claims, (2) the Court may take judicial notice of matters of public record, and (3) the Court may look outside the Complaint to determine whether subject matter jurisdiction exists. *See Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

previously dismissed with prejudice, and three that are virtually identical to the claims the Court dismissed without prejudice.[2] (Mem. Op. and Order, ECF No. 71 at 38.) Now that the state court foreclosure has concluded, Plaintiff's claims are not only (still) meritless, but they are also barred by *res judicata* and the *Rooker-Feldman* doctrine. Plaintiff's Complaint should be dismissed with prejudice.

## BACKGROUND

**A.      State Court Lawsuit**

In September 2007, Household Finance Corporation III ("HFC") initiated a foreclosure action against Plaintiff. (A copy of HFC's foreclosure complaint is attached as Exhibit A.) In July 2008, Plaintiff filed counterclaims ("Counterclaims") against HFC (via her "Second Amended Answer, Affirmative Defenses and Counterclaims," a copy of which is attached as Exhibit B), alleging that HFC's mortgage was not valid because it supposedly was not recorded, that her loan violated the Illinois Interest Act ("Interest Act"), that HFC lacked standing to foreclose the mortgage, and that HFC violated the Truth in Lending Act ("TILA") which entitled her to rescind the mortgage and recover damages.

On June 3, 2010, the court granted HFC's motion for judgment on the pleadings and entered judgment in favor of HFC on Plaintiff's Counterclaims. (A copy of the court's order is attached as Exhibit C.) Plaintiff then filed an amended counterclaim ("Amended Counterclaim"), again asserting claims for violation of the Interest Act (a copy of the Amended Counterclaims is attached as Exhibit D). On November 19, 2015, however, the state court granted HFC's motion for summary judgment on Plaintiff's Amended

---

[2] Plaintiff also reasserts a separate "claim" for "punitive damages," which this Court previously dismissed without prejudice because there is "no statutory or common law basis" that this is an independent cause of action. (Mem. Op. and Order, ECF No. 71 at 38.)

2

Counterclaim (a copy of this order is attached as Exhibit E), leaving only HFC's claim to foreclose. The state court ultimately granted HFC's motion for summary judgment on its foreclosure claim and entered a judgment of foreclosure and sale in HFC's favor (copies of the judgments are attached as Exhibit F). Pursuant to the judgment, the property was sold to a third party (a copy of the order approving sale is attached as Exhibit G).

Plaintiff then appealed the judgments against her. In affirming those judgments (copy of the appellate court's decision is attached as Exhibit H), the Illinois Appellate Court found that: (1) HFC's mortgage was valid and enforceable; (2) Plaintiff's TILA claims failed because there was no evidence that "the original lender ... failed to provide the requisite disclosures which would extend the rescission period from three days to three years," because Plaintiff could not identify "any portion of the record to suggest that she sent a timely rescission letter" to HFC, and because there was no suggestion "that [HFC] would be liable for any failure to honor a purported notice of rescission"; and (3) Plaintiff's Interest Act claims failed because they were preempted by the federal Alternative Mortgage Transaction Parity Act of 1982 ("Parity Act"), 12 U.S.C. §§ 3801, *et seq*. (Ex. H at 11-17.) Plaintiff did not seek further review.

**B.  Federal Court Lawsuit**

While the state court foreclosure case was pending, Plaintiff filed this lawsuit on December 30, 2013, to complain about that proceeding. In doing so, Plaintiff sued virtually every party that had any connection to her mortgage or the foreclosure case—namely, the mortgagee (HFC), companies allegedly related to the mortgagee (HSBC Finance Corporation ("HSBC Finance") and HSBC Mortgage Services, Inc. ("HSBC Mortgage")), the original mortgagee (Mortgage Electronic Registration Systems, Inc. ("MERS")), which was

3

acting solely as a nominee to the original lender and its successors and assigns, MERS's parent company (MERSCORP Holdings, Inc. ("MERSCORP"), which never held any interest in the mortgage), HFC's foreclosure counsel (Freedman Anselmo Lindberg, LLC) and one of its named partners (Steven Lindberg), and HFC's litigation counsel (Pilgrim Christakis) and one of its named partners (Mr. Pilgrim). Plaintiff even sued her own attorney (Arnold G. Kaplan). For their part, Pilgrim Christakis is alleged to have represented HFC "four years into" the foreclosure case, (Am. Compl. ¶ 2, ECF No. 6), and Mr. Pilgrim is alleged to have "directed and supervised" certain Pilgrim Christakis attorneys as part of that representation, (*id.* ¶¶ 132, 145).

Plaintiff's First Amended Complaint was based on her claim that her own attorney, the Pilgrim Christakis Defendants, and the seven other defendants "entered into a conspiracy" to bring "unlawful foreclosure actions which they had no standing to file" and, in doing so, allegedly "forged mortgage documents, fabricated assignments, perjured affidavits and fraud [sic] in their ongoing attempt to illegally foreclose on [her] property." (*Id.* ¶ 2.) On those allegations, Plaintiff's asserted 15 separate claims: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 11 U.S.C. § 1962 (Counts I, II, and III); wire fraud, 18 U.S.C. § 1343 (Count IV); fraud and deceit, 18 U.S.C. § 1503 (Count V); "false oaths," 18 U.S.C. § 1623(a) (Count VI); violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count VII); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692j (Count VIII); violation of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 (Count IX); violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, 3604, and 3605 (Count X); violation of the Home Ownership Equity Protective Act

4

("HOPEA"), 15 U.S.C. § 1602(aa) (Count XI); violations of the Interest Act (Counts XII and XIII); violation of TILA (Count XIV); and "punitive damages" (Count XV). (*Id.* ¶¶ 176-253.)

On August 1, 2014, this Court dismissed all Plaintiff's claims against the Pilgrim Christakis Defendants and stayed certain claims against HFC, HSBC Finance, and HSBC Mortgage (collectively, "HSBC Defendants) and MERSCORP and MERS (collectively, "MERS Defendants") pending the outcome of the state court proceeding. Specifically, the Court dismissed *with prejudice* Plaintiff's claims against the Pilgrim Christakis Defendants for wire fraud, fraud and deceit, "false oaths," and violations of RESPA, the FDCPA, the Civil Rights Act, the FHA, HOPEA, the Interest Act, and TILA. (Mem. Op. and Order, ECF No. 71 at 38.) The Court also dismissed Plaintiff's RICO claims *without prejudice*, while advising Plaintiff that if she "chooses to amend her complaint, she should be aware of this Court's recent order in *Dremco, Inc.*, 2014 WL 3056838, in which the Court granted the defendants' motion for sanction because of an improperly filed RICO case." (*Id.* at 18.) That left Plaintiff's claim for violation of HOEPA against the HSBC and MERS Defendants and her claims for violations of the Interest Act against the HSBC Defendants, which the Court stayed pursuant to the *Colorado River* doctrine because the "exact same claims" were pending in the foreclosure case. (*Id.* at 33-38.)

Now that the foreclosure case has concluded, Plaintiff attempts to revive her claims—most of which the Court has already dismissed with prejudice—and relitigate the validity of HFC's mortgage and terms of her loan. In her recently-filed Second Amended Complaint, Plaintiff drops the MERS Defendants as parties, but reasserts her allegations that the other Defendants all "conspired" to file a "fraudulent foreclosure" and collect an "unlawful debt." On those allegations, Plaintiff asserts the same three RICO claims against

5

the Pilgrim Christakis Defendants, almost verbatim (Counts I-III); she asserts the same FDCPA claim that the Court dismissed with prejudice (Count IV); and she may be asserting claims for violations of HOEPA and the Interest Act against the Pilgrim Christakis Defendants—the same ones the state trial and appellate courts rejected (Counts VI and VIII).

As explained below, Plaintiff's frivolous effort to prolong over a decade of litigation should be rejected. Her Complaint—and this action—should be dismissed with prejudice.

## ARGUMENT

**I.     Plaintiff's RICO claims should be dismissed with prejudice.**

**A.     Plaintiff's RICO claims are barred by *Res Judicata* and the *Rooker-Feldman* Doctrine.**

Plaintiff's RICO claims allege that the Pilgrim Christakis Defendants were part of a "scheme" to deprive her of property in which their client, HFC, had no valid interest and to collect an "unlawful debt" via a "fraudulent foreclosure." (2d Am. Compl. ¶¶ 57-58, 60, 63, 70.) In Plaintiff's words: "[w]hen foreclosing Defendants foreclosed on the property and confiscated the property obtaining a judgment in excess of $249,686.75, this constituted collection of unlawful debt in violation of RICO." (*Id.* ¶ 51.) But the state court determined that HFC had a valid and enforceable mortgage on Plaintiff's property and entered a deficiency judgment against her for the loan balance remaining after the foreclosure sale. (*See* Exs. F, G, H.) Thus, *res judicata* bars relitigation of those issues. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956 (7th Cir. 1997) ("*res judicata* extends to all questions actually decided in a previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation"); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235-36 n.6 (7th Cir. 1986) (finding a bank's attorneys "are in privity with

6

the Bank for purposes of *res judicata*," and RICO claims were barred because they attempted to relitigate the validity of a mortgage and could "impair the rights established in the state court mortgage foreclosure proceedings").

Further, the basis of Plaintiff's RICO claims—i.e., that the state court's judgment of foreclosure and order approving sale are a "fraudulent" attempt to collect an "unlawful debt"—epitomizes a "state-court loser complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Hence, these claims are barred by the *Rooker-Feldman* doctrine. *See Nora v. Residential Fund. Co., LLC*, 543 F. App'x 601, 602 (7th Cir. 2013) ("[b]y alleging that the fraudulent assignment to [defendant] allowed it to succeed in foreclosing on her property in state court, [plaintiff] is impermissibly asking a federal district court to review and reject the state court's judgment of foreclosure of her property"); *Kamilewic v. Bank of Boston Corp.*, 92 F. 3d 506, 511 (7th Cir. 1996) (dismissing RICO claims against state-court defendants and their attorneys under the *Rooker-Feldman* doctrine because "the proper court for an assertion of fraud in the procurement of a judgment is the one which rendered the judgement").

### B. Plaintiff's Complaint Fails to State Any Actionable RICO Claim.

Even though the Court dismissed Plaintiff's RICO claims and expressly warned her that "an improperly filed RICO case" is sanctionable, (Mem. Op and Order, ECF No. 71 at 18), Plaintiff asserts nearly identical claims. Here again, Plaintiff alleges:

- "Defendants acting individually and/or by and through their officers and directors, engaged in a fraudulent scheme and common plan which included using or causing the interstate wires to transfer and obtain funds from fraudulent and unlawful collection activities and fraudulent foreclosures and by so doing they engage in multiple commissions of wire fraud involving the same and/or similar representations . . . .," (2d Am. Compl. ¶ 60, Count I);

7

- "Defendants agreed to the conspiracy of the fraudulent foreclosure filings scheme and the collection of unlawful debt by using their computers, phones and wires to distribute to Plaintiff and the judiciary the false, fraudulent and deceitful foreclosure filings," (*id.* ¶ 70, Count III); and

- "Defendants have conspired to use or invest income derived from the collection of unlawful debt in violation of 18 USC § 1962(d)," (*id.* ¶ 63, Count II).

RICO is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity," and there are four required elements of a civil claim: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). When, as here, the alleged predicate acts sound in fraud, the heightened pleading requirements of Rule 9(b) apply. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). For the same reasons the Court previously identified—and Plaintiff seemingly ignored—her Complaint fails to state an actionable RICO claim.

### 1. Plaintiff does not allege the required "conduct."

In *Reves v. Ernst & Young*, the Court held that the "conduct" element requires a plaintiff to establish that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played "*some* part in directing the enterprise's affairs." 507 U.S. 170, 179 (1993); *see also Goren*, 156 F.3d at 727 ("mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise"). Plaintiff does not allege that Pilgrim Christakis had *any* role in the operation or management of an enterprise and makes only conclusory allegations that "all other Defendants" were "directed" by "Defendants Lindberg and [Mr. Pilgrim]," (2d. Am. Compl. ¶¶ 47, 56). *Goren*, 156 F.3d at 727 (finding a plaintiff

8

cannot "allege [RICO] elements in boilerplate fashion; instead, [he] must allege sufficient facts to support each element."). For this alone, Plaintiff's RICO claims should be dismissed with prejudice.

### 2. Plaintiff does not allege a RICO "enterprise."

A RICO enterprise must be clearly identified and have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). As in her First Amended Complaint, Plaintiff only makes conclusory allegations that "Defendants Steven Lindberg … and Jeffrey Pilgrim acting by themselves or through or with the other persons, associations and/or companies, have formulated, directed, controlled, or participated in the acts or practices of … all other Defendants named herein," (2d. Am. Compl. ¶ 47), that "Defendants conspired to collect unlawful debt," (*Id*. ¶ 50), and "Defendants follow the directions of Defendants Lindberg and Pilgrim to file fraudulent foreclosures, to collect unlawful debts," (*Id*. ¶ 58).

This Court previously found, "these allegations do not come close to satisfying the enterprise element" and fail to identify "the particular Defendants' roles in the organization, how the particular individuals are joined together, what orders come from the 'top' of the structure, or how the orders are relayed to the other members," (Mem. Op. and Order, ECF No. 71 at 14). *See Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) ("a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense"); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (finding RICO allegations deficiently "'lumped together' multiple defendants"). Hence, Plaintiff's vague allegations concerning a "string of

9

participants … lacking any distinct existence and structure" fails to establish a RICO "enterprise." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000).

### 3. Plaintiff does not allege predicate "racketeering activity."

Plaintiff's RICO claims are premised on a purported "scheme" to file "false, fraudulent, and deceitful foreclosure filings." (2d Am. Compl. ¶¶ 47, 51-53, 58, 69-70.) As numerous courts in this District have held, "Plaintiffs cannot establish predicate acts of racketeering based on the false statements allegedly contained in foreclosure complaints and supporting documents." *Drobny v. JP Morgan Chase Bank, N.A.*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013); *see also Carthan-Ragland v. Standard Bank & Trust*, No. 11-cv-5864, 2012 WL 1658244, at *2 (N.D. Ill. May 11, 2012) (filing a foreclosure complaint "is not considered mail or wire fraud or a predicate act under RICO").[3] Since Plaintiff does not allege any acts of racketeering, her RICO claims fail as a matter of law.

### 4. Plaintiff does not allege a "pattern" of racketeering activity.

Even if Plaintiff had alleged a predicate act of racketeering, she cannot allege a pattern of such activity. The Seventh Circuit has found that "a single fraudulent scheme with only one injury to one victim was not a 'pattern of racketeering activity'" merely "because it required several acts of mail and wire fraud to inflict the single injury." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001). The court in *Drobny* applied this principle in dismissing a similar RICO claim based on allegedly fraudulent foreclosure filings:

---

[3] The court also noted in *Drobny*, "[e]ven assuming that Defendants knew that the foreclosure complaints were false, they would have intended to deceive the [state court], not Plaintiffs. This is insufficient under RICO because one cannot commit mail or wire 'fraud by fooling one person to receive something of value from another.'" 929 F. Supp. 2d at 848.

10

> While Plaintiffs make conclusory references to "thousands of foreclosures," the only scheme that is set forth in any detail in the complaint is Chase's allegedly improper attempt to foreclose on Plaintiffs' own mortgage. This purported scheme does not rise to the level of "pattern of racketeering activity" because Plaintiffs are the sole victims.

*Drobny*, 929 F. Supp. 2d at 850. Similarly, although Plaintiff passingly refers to "loans throughout Illinois and throughout the United States that violate the laws identified herein," (2d Am. Compl. ¶ 6), the only alleged "scheme" is a foreclosure of her own mortgage, (*id.* ¶ 51). Thus, Plaintiff is the sole (alleged) "victim" and there is no "pattern of racketeering" required under RICO.

### 5. Plaintiff fails to state a RICO conspiracy claim.

Finally, Plaintiff fails to plead a RICO conspiracy under Section 1962(d). (2d Am. Compl. ¶ 63.) In addition to the four RICO elements discussed above, a conspiracy requires:

> (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals.

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822-23 (7th Cir. 2016). Since Plaintiff cannot plead the elements of a direct RICO violation, she also cannot state a conspiracy claim. *Green v. Morningstar, Inc.*, No. 17 C 5652, 2018 WL 1378176, at *9 (N.D. Ill. Mar. 16, 2018) ("Green has not sufficiently alleged the existence of an enterprise and he therefore has failed to state a valid claim pursuant to § 1962(d)").

Additionally, Plaintiff summarily asserts that undifferentiated "Defendants" "conspired to use or invest income derived from the collection of unlawful debt in violation of 18 USC § 1962(d)." (2d Am. Compl. ¶ 63.) But the Complaint fails to allege facts regarding the roles played by the Pilgrim Christakis Defendants or by the other defendants, or when and how all the defendants agreed to commit the acts alleged. *See Goren*, 156 F.3d

11

at 732 (dismissing conspiracy claim due to plaintiff's failure to allege facts concerning the roles of the parties in the alleged enterprise or that there was an agreement between the parties). And, besides conclusory accusations that the parties "conspired," Plaintiff does not state how any of the Defendants were involved in any agreement to participate in an enterprise committing a predicate act.

For all these reasons, Plaintiff's RICO Claims should be dismissed with prejudice.

## II. Plaintiff's FDCPA claim should be dismissed with prejudice.

Plaintiff's FDCPA claim fails for several reasons. First, Plaintiff's claim is based on her allegation that the Pilgrim Christakis Defendants attempted to collect a debt that HFC "had no right to collect" because she supposedly rescinded her mortgage loan. (2d Am. Compl. ¶¶ 74-78.) But the state court held that Plaintiff *did not* rescind her mortgage and thus owed the amounts due on her loan. (*See* Exs. F, G, H.) Hence this claim is barred by *res judicata*. *See Henry*, 808 F.2d at 1235-36 (finding claims barred by *res judicata* if they "impair the rights established in the state court mortgage foreclosure proceedings"). Similarly, Plaintiff's FDCPA claim is also barred by the *Rooker-Feldman* doctrine because it would require the Court to overturn the state court's judgment and find that Plaintiff was not obligated to repay her mortgage. *See Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 605 (7th Cir. 2008) ("We could not determine that defendants' representations and requests related to attorney fees violated the [FDCPA] without determining that the state court erred by issuing judgments granting the attorney fees").

Second, as this Court held when it dismissed this claim *with prejudice*, Plaintiff's FDCPA claim is barred by the one-year statute of limitations, (Mem. Op. and Order, ECF No. 71 at 25, 38). *See* 15 U.S.C. § 1692k(d). In this District, the statute of limitations begins to

12

run when the allegedly wrongful litigation begins (i.e., the filing of the complaint). *See Bybee v. Kovitz, Shifrin Nesbit*, No. 18-cv-04858, 2019 WL 414662, at *3 (N.D. Ill. Feb. 1, 2019). Plaintiff alleges that "the foreclosing defendants" sent her "monthly statements" after she purportedly rescinded her mortgage in 2003 and then filed the most recent foreclosure action in September 2007. (2d Am. Compl. ¶¶ 74-75.) Therefore, the statute of limitations on her FDCPA claim expired—at the very latest—in September 2008, over 5 years before she filed this action.

And even if Plaintiff's FDCPA claim were not barred by *res judicata, Rooker-Feldman*, and the statute of limitations, her claim still fails because she does not plead facts establishing that any of the Pilgrim Christakis Defendants are "debt collectors"—i.e., a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or who regularly collects debts owed to another. 15 U.S.C. § 1692a(6); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009) (The FDCPA applies only to "debt collectors."). Plaintiff only alleges that the Pilgrim Christakis Defendants were involved in the representation of HFC in the foreclosure case. (2d Am. Compl. ¶¶ 17, 44, 46-49, 51-52, 74, 77-80.) But, notably, the Supreme Court recently clarified that law firms involved in foreclosure proceedings are not subject to the FDCPA. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036-38 (2019). Accordingly, Plaintiff's FDCPA claims should (again) be dismissed with prejudice.

**III. Plaintiff's HOPEA and Interest Act claims should be dismissed with prejudice.**

In Counts VI and VIII, respectively, Plaintiff asserts the same claims under HOPEA, 15 U.S.C. §§ 1602(aa), 1610, 1639, 1640, and the Interest Act, 815 ILCS 205/0.01, *et seq*. (2d Am. Compl. ¶¶ 86-91, 99-107.) While these Counts don't appear to be directed against the

13

Pilgrim Christakis Defendants,[4] Plaintiff's intention is muddied by her bald references to "Defendants" generally, without differentiating between them. But if they are asserted against the Pilgrim Christakis Defendants, they fail for basic threshold reasons.

First, they fail because the Pilgrim Christakis Defendants are not creditors. Indeed, as this Court held when it dismissed Plaintiff's HOEPA claim *with prejudice*, "HOPEA only appl[ies] to creditors" and the Pilgrim Christakis Defendants "do not fall under the definition of 'creditors' nor could they," (Memo. Op. and Order, ECF No. 71 at 29). *See* 15 U.S.C. § 1602(g) (defining "creditor"). And, as this Court held when it dismissed Plaintiff's Interest Act claim *with prejudice*, the Pilgrim Christakis Defendants "had no role in [Plaintiff] procuring the mortgage, did not lend [Plaintiff] any money, and did not accept anything in return for any mortgage loan." (Mem. Op. and Order, ECF No. 71 at 37.)

Second, Plaintiff's HOEPA and Interest claims are barred because she asserted the exact same claims in the foreclosure proceeding, and the state trial and appellate courts conclusively rejected them. *See* Ex. H at 12 (holding that Plaintiff did not rescind her mortgage); Ex. H at 13-17 (holding that Plaintiff's Interest Act claim is preempted by the federal Parity Act). Thus, Plaintiff's attempt to reassert these claims here is barred by *res judicata*. These claims are also barred under *Rooker-Feldman* because, to decide Plaintiff's claims, this Court necessarily would need to either agree with (affirm) or disagree with (overrule) the state trial and appellate courts. *See Brown v. Bowman*, 668 F.3d 437, 442

---

[4] The only relief sought by Plaintiff's HOEPA claim is rescission of the mortgage, (2d Am. Compl. ¶ 91), which the Pilgrim Christakis Defendants would have no ability to effectuate as they are not the mortgagee. And in Plaintiff's Interest Act claim references only the HSBC Defendants; and, incidentally, her preceding Interest Act claim (Count VII) specifies that it is directed against the HSBC Defendants only.

14

(7th Cir. 2012) ("*Rooker-Feldman* bars … a plaintiff's request of a federal district court to overturn an adverse state court judgment").

## IV.    Plaintiff's claim for "punitive damages" should be dismissed with prejudice.

Plaintiff's stand-alone claim for "punitive damages" in Count X should be dismissed because there is no such cause of action. *See, e.g., Smith v. St. James Hosp. and Health Ctrs.*, No. 02-cv-2953, 2003 WL 174195, at *2 (N.D. Ill. Jan. 27, 2003) ("[A] claim for punitive damages is not a separate claim. Thus, the motion to dismiss … is granted.").

## CONCLUSION

For the reasons set forth above, Defendants Pilgrim Christakis LLP and Jeffrey Pilgrim respectfully request that the Court dismiss Plaintiff's Second Amended Complaint with prejudice, and award Defendants any other relief the Court deems just and appropriate.

    Respectfully submitted,

    PILGRIM CHRISTAKIS LLP and
    JEFFREY PILGRIM

    By: /s/ James J. Morrissey
       One of their attorneys

Anna-Katrina S. Christakis
James J. Morrissey
Pilgrim Christakis LLP
321 N. Clark Street, 26th Floor
Chicago, Illinois 60654
Ph: (312) 280-0441
Fax: (312) 939-0983
kchristakis@pilgrimchristakis.com
jmorrissey@pilgrimchristakis.com

15

**CERTIFICATE OF SERVICE**

      James J. Morrissey, an attorney, certifies that on October 1, 2019, he electronically filed the foregoing **Pilgrim Christakis Defendants' Memorandum in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send a notification to all parties of record.

                                                       /s/ James J. Morrissey