**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ELOISE LOCKHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 13 C 9323 |
| v. | ) | |
| | ) | |
| HSBC FINANCE CORPORATION, et al., | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Eloise Lockhart, an attorney representing herself, brings this action relating to a mortgage loan she took out in 2003 and the efforts to foreclose on her home in state court proceedings. She names a variety of defendants: HSBC Finance Corporation ("HSBC Finance"), Household Finance Corporation III ("HFC"), and HSBC Mortgage Services, Inc., incorrectly sued as "HSBC Mortgage Services Corp." ("HSBC Mortgage") (together, "HSBC Defendants"); Pilgrim Christakis LLP, f/k/a Grady Pilgrim Christakis Bell LLP ("Pilgrim Christakis"), and Jeffrey Pilgrim (together, "Pilgrim Christakis Defendants"); Freedman Anselmo Lindberg, LLC, n/k/a Anselmo Lindberg & Associates, LLC ("FAL"), and Steven C. Lindberg (together, "FAL Defendants"); and Arnold G. Kaplan. A previous complaint also named MERSCORP Holdings, Inc., incorrectly sued as MERSCORP, Inc. ("MERSCORP"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (together, "MERS Defendants"). On August 1, 2014, the Court dismissed significant parts of Lockhart's claims as plead in her First Amended Complaint, and stayed

others pending the resolution of a parallel state court action (such order, the "2014 Order," and such complaint, the "FAC"). R. 71. When the stay was lifted, the Court permitted Lockhart to amend her complaint. Lockhart's new complaint (the "SAC") raises many of the claims the Court previously dismissed. Defendants now move to dismiss the SAC. R. 155; R. 157; R. 159; R. 160. In addition, Lockhart moved for reconsideration of the 2014 Order. R. 168. For the reasons that follow, the motions to dismiss are granted, and Lockhart's motion for reconsideration is denied.

## Background[1]

***State court action.*** HFC initiated a state court foreclosure action against Lockhart in September 2007 concerning a 2003 mortgage loan on her home. Lockhart then filed counterclaims against HFC, alleging that: (1) HFC's mortgage was not valid because it was not recorded; (2) her loan violated the Illinois Interest Act ("Interest Act"); (3) HFC lacked standing to foreclose the mortgage; and (4) HFC violated the Truth in Lending Act ("TILA"), which entitled her to rescind the mortgage and recover damages.

The state court granted HFC's motion for judgment on the pleadings and entered judgment in favor of HFC on several of Lockhart's counterclaims on June 3, 2010, leaving only her claim to quiet title and for rescission of the loan. Lockhart thereafter filed an amended counterclaim again asserting claims for violation of the

---

[1] The Court assumes familiarity with the background of this case. For additional information, see the Court's 2014 Order granting in part and denying in part certain defendants' motions to dismiss the FAC, R. 71, and the Court's September 30, 2014 memorandum opinion and order denying Lockhart's initial motion for reconsideration of that order, R. 86.

2

Interest Act. On November 19, 2015, the state court granted HFC's motion for summary judgment on Lockhart's claim to quiet title and amended counterclaims, leaving only HFC's claim to foreclose. Ultimately, the state court also granted HFC's motion for summary judgment on its foreclosure claim, and entered a judgment of foreclosure and sale in HFC's favor in April 2017. The property was subsequently sold to a third party pursuant to that judgment, and the court approved and confirmed that sale and a deficiency judgment against Lockhart in May 2018.

Lockhart appealed the judgments against her, which the Illinois Appellate Court affirmed in March 2019 in all respects. In so doing, the court found that: (1) HFC's mortgage was valid and enforceable; (2) Lockhart's Interest Act claims were preempted by the Alternative Mortgage Transaction Parity Act of 1982 ("Parity Act"), 12 U.S.C. §§ 3801, *et seq.*; and (3) Lockhart's TILA claims failed because she failed to direct the court's attention to any evidence that "the original lender . . . failed to provide the requisite disclosures which would extend the rescission period from three days to three years," she could not identify "any portion of the record to suggest that she sent a timely rescission letter" to HFC (and nor could the Court locate any), and there was no suggestion "that [HFC] would be liable for any such failure to honor a purported notice of rescission." Lockhart did not seek further review. R. 158, Ex. 8.

***Lockhart's federal action.*** Lockhart filed this lawsuit in December 2013 while the state court case was pending. She sued numerous parties connected in varying manner and degree to her mortgage or the foreclosure case, including: HFC as mortgagee; HSBC Finance and HSBC Mortgage as related to the mortgagee;

3

MERS as the original mortgagee; MERSCORP as MERS's parent company; FAL as HFC's foreclosure counsel and Mr. Lindberg as an FAL named partner; Pilgrim Christakis as HFC's litigation counsel and Mr. Pilgrim as a Pilgrim Christakis named partner; and Mr. Kaplan, her attorney in the state court proceedings.

Lockhart's FAC was based on her claim that the defendants conspired to bring "unlawful foreclosure actions which they had no standing to file," and that they "forged mortgage documents, fabricated assignments, perjured affidavits," and committed "fraud in their ongoing attempt to illegally foreclose on [her] property." R. 6 ¶ 2. It asserted fifteen claims. Specifically, for: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; wire fraud; fraud and deceit; false oaths; violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692j; violation of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982; violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, 3604, 3605; violation of the Home Ownership Equity Protective Act ("HOEPA"), 15 U.S.C. § 1602(aa); violation of the Interest Act; and violation of TILA. The FAC also included a standalone claim for punitive damages.

The Court dismissed nearly all of Lockhart's claims on August 1, 2014, and stayed those remaining pending resolution of the state court foreclosure action. More specifically, the Court dismissed with prejudice Lockhart's claims for wire fraud, fraud and deceit, and "false oaths," and for violations of RESPA, the FDCPA, the Civil Rights Act, the FHA, and TILA. Lockhart's HOEPA claims were also dismissed with

prejudice as to all defendants except the HSBC and MERS Defendants, and Lockhart's Interest Act claims were dismissed with prejudice as to all but the HSBC Defendants. Additionally, Lockhart's RICO claims were dismissed without prejudice for failure to state a claim, but the Court warned that if Lockhart sought to amend her complaint, she should be aware of a recent order in which the Court granted the defendants' motion for sanctions because of an improperly filed RICO case. R. 71 at 18. Lockhart's claim for punitive damages was also dismissed. Accordingly, only Lockhart's HOEPA claims against the HSBC and MERS Defendants and her Interest Act claims against the HSBC Defendants remained. And the Court stayed those claims under *Colorado River* since the "exact same claims" were pending in state court. *Id.* at 33-38. The Court denied wholesale a motion for reconsideration that Lockhart filed shortly thereafter as "border[ing] on frivolous." R. 86 at 1.

***The operative complaint.*** Once the state court foreclosure action concluded, the Court lifted the stay on this case and granted Lockhart leave to file the Second Amended Complaint ("SAC"). R. 148. The SAC—consisting of 24 pages and 117 paragraphs—purports to state ten claims, many of which were previously dismissed with prejudice. And it again challenges the validity of HFC's mortgage and the terms of her loan, alleging that the defendants "conspired" to file a "fraudulent foreclosure" and collect an "unlawful debt." Indeed, the SAC repeats Lockhart's previously dismissed RICO claims largely verbatim (Counts I – III); asserts the same FDCPA, FHA, and TILA claims the Court dismissed with prejudice (Count IV, V, and IX, respectively); and asserts the same claims for HOEPA and Interest Act violations she

5

raised before the state trial and appellate courts (Counts VI, VII and VIII). Finally, the SAC once more includes a standalone claim for punitive damages (Count X).

Four motions to dismiss followed the SAC, and once those motions were fully briefed, Lockhart filed a second motion for reconsideration of the 2014 Order dismissing much of her FAC. The Court addresses those motions below, beginning with the motions to dismiss.

## Analysis

### I. Motions to Dismiss

#### A. Standard

Defendants' motions were brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), or both. A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When evaluating a motion to dismiss under Rule 12(b)(1), if there are no factual disputes, the Court accepts the allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th. Cir. 2017). But "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

In contrast, a Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). Generally, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to

6

provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

But "claims sounding in fraud are subject to a more stringent pleading requirement." *Sadler v. Retail Props. of Am., Inc.*, 2014 WL 2598804, at *7 (N.D. Ill. June 10, 2014). Federal Rule of Civil Procedure 9(b) requires plaintiffs alleging fraud to state "with particularity" the circumstances constituting fraud; that is, the "who, what, when, where, and how" of the fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). This heightened pleading standard applies to fraud claims brought under RICO. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

### B. Analysis

#### 1. MERS Defendants

At the outset, the MERS Defendants contend that because the SAC makes no specific allegation against them and does not include them in the "parties" section or list them in the case caption, Lockhart has abandoned any claims against them. The Court notes that the SAC's Count IX—under TILA—does purport to be against both the HSBC and MERS Defendants. But because Lockhart fails to respond to the MERS Defendants' argument, the MERS Defendants can be dismissed with prejudice on that basis alone. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss").

#### 2. Remaining Defendants

The Court analyzes each of the claims in the SAC as to the remaining defendants below, beginning with those brought under RICO.

***RICO (Counts I – III; all defendants).*** The SAC repleads Lockhart's RICO claims, the form and substance of which largely mirror the RICO claims this Court previously dismissed. In sum, those claims assert that the defendants were part of a "scheme" to deprive her of property in which they had no valid interest, and to collect an "unlawful debt" via a "fraudulent foreclosure." *See generally* R. 152-1. Defendants contend that dismissal is proper because: the *Rooker-Feldman* doctrine prevents the Court from hearing Lockhart's claims; they are barred by *res judicata*; and the SAC

8

fails to state valid RICO claims in any case. Because the *Rooker-Feldman* doctrine is a limit on the Court's subject matter jurisdiction, the analysis begins there.

*Rooker-Feldman* prohibits federal district courts from reviewing state court civil judgments, including claims that are inextricably intertwined with those judgments. *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). But it is a narrow doctrine, and may be applied only in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). Further, "the Supreme Court has warned not to confuse *Rooker-Feldman* with claim preclusion: 'If a federal plaintiff present[s] some independent claim that denies a legal conclusion that a state court has reached in a case to which he was a part . . . , then there is jurisdiction, and state law determines whether the defendant prevails under principles of preclusion.'" *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016) (quoting *Exxon-Mobil v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, (2005)).

Lockhart contends that *Rooker-Feldman* is inapplicable here, because she filed this case while the state court case was still pending. The Court agrees. The Seventh Circuit has applied *Rooker-Feldman* to federal cases initiated after certain interlocutory state court orders, provided they are effectively final. And it most recently applied the doctrine to a case concerning a foreclosure action that was, as a technical matter, still pending. *Bauer v. Koester*, 951 F.3d 863 (7th Cir. 2020). But in

9

*Bauer*, the state court had already entered a judgment of foreclosure when the suit was filed in federal court. *Id.* at 867 (holding foreclosure case was "effectively final" after entry of judgment of foreclosure). In contrast, here, the judgment of foreclosure was not entered until years after this action was initiated. Accordingly, the Court turns to preclusion principles.

In Illinois, *res judicata* bars a subsequent action if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956 (7th Cir. 1997). Here, the state trial court in the foreclosure action held that HFC had a valid and enforceable mortgage on Lockhart's property, and entered a deficiency judgment against her for the loan balance remaining after the foreclosure sale; and the appellate court subsequently affirmed. *See* R. 158, Exs. F, G, H. Accordingly, *res judicata* bars the relitigation of those issues through Lockhart's RICO claims. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235-36 (7th Cir. 1986) (RICO claims barred by *res judicata* because they attempted to relitigate the validity of a mortgage and could "impair the rights established in the state court mortgage foreclosure proceedings").

Nevertheless, Lockhart argues: (1) that no "decision in the state court proceeding constituted a final decision on the merits of [Lockhart's] RICO collection of unlawful debt claim;" and (2) HFC was the only plaintiff in the state case and the remaining defendants are not all in privity with it. R. 163 at 3. Lockhart's first argument fails, because *res judicata* "extends to all questions actually decided in a

10

previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation." *Whitaker*, 129 F.3d at 956 (citing *La Salle Nat'l Bank v. Cnty. Bd. of Sch. Trustees*, 337 N.E.2d 19, 22 (Ill. 1975)). Even though Lockhart didn't bring a RICO claim in the state case, she could have, so *res judicata* applies.

Further, Lockhart is simply wrong about the privity among the defendants. The HSBC Defendants are members of the same corporate family.[2] *See Aetna Cas. & Sur. Co. v. Kerr-McGee Chem. Corp.*, 875 F.2d 1252, 1257 (7th Cir. 1989) ("same parties" element can be satisfied "even though technically distinct corporate entities are involved in the various pending actions" when their interests are "sufficiently congruent"). And as HFC's counsel, the FAL and Pilgrim Christakis Defendants are in privity with HFC, too. *See Henry*, 808 F.2d at 1231, 1235 n.6 (bank's attorneys were in privity with the bank in case in which plaintiffs "sued everyone even remotely connected with the mortgage foreclosures," and the bank was the only "actual party" to the state court foreclosure proceedings).

But even if *res judicata* does not apply to all of the defendants, issue preclusion bars the RICO claims against each of them. Those claims depend on the alleged invalidity of the mortgage, and there can be no dispute that that issue was adjudicated on its merits and against Lockhart. *See Allison W. v. Oak Park and River*

---

[2] According to the HSBC Defendants' corporate disclosures, HFC is a wholly-owned subsidiary of an entity which in turn is a wholly-owned subsidiary of HSBC Holdings plc. And HSBC Mortgage is a wholly-owned subsidiary of another entity, which in turn is also a wholly-owned subsidiary of HSBC Holdings plc. R. 9.

11

*Forest H.S. Dist. 200*, 193 F. Supp. 3d 894, 897-98 (N.D. Ill. 2016) (issue preclusion bars a party from relitigating an issue already litigated and determined in a previous suit in which the party it is being asserted against was also a party, there was a final judgment on the merits, and a full and fair opportunity to litigate the issue); *see also* R. 158, Ex. F (state court order holding mortgage lien was "valid and subsisting"). Accordingly, Lockhart's RICO claims are now dismissed with prejudice.[3]

**FDCPA (Count IV; all defendants except Kaplan).** Defendants next seek dismissal of Lockhart's FDCPA claim, including because they contend it is barred by *res judicata* and the statute of limitations. The Court previously dismissed Lockhart's FDCPA claim with prejudice as barred by the one-year statute of limitations because,

---

[3] Finally, even if the RICO claims were not barred, they fail because the SAC's generalized and conclusory allegations regarding the defendants' alleged fraudulent behavior come nowhere close to satisfying the enterprise element or Rule 9(b). Indeed, they do not describe the core of the organization, and impermissibly lump the defendants together. *See, e.g.*, R. 152-1 ¶¶ 47, 50, 58 (alleging that Mssrs. Lindberg and Pilgrim "acting by themselves or through or with other persons, associations and/or companies, have formulated, directed, controlled, or participated in the acts or practices of . . . all other Defendants named herein," "Defendants conspired to collect unlawful debt," and "Defendants follow the directions of Defendants Lindberg and Pilgrim to file fraudulent foreclosures, [and] to collect unlawful debts"); *see also Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) ("nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense"); *Vicom, Inc.*, 20 F.3d at 778 (RICO claim deficient for "lump[ing] together multiple defendants"). Nor do they sufficiently allege a pattern of racketeering activity. As in *Drobny v. JP Morgan Chase Bank, N.A.*, the SAC refers in conclusory fashion to "loans throughout Illinois and throughout the United States that violate the laws identified herein," but the only alleged "scheme" concerns the foreclosure of Lockhart's mortgage, and a "pattern" cannot be founded on injuries to a single victim. 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) (dismissing RICO action where plaintiffs made "conclusory references to 'thousands of foreclosures,' [but] the only scheme that is set forth in any detail in the complaint" was with respect to the plaintiff's own mortgage); R. 152-1 ¶¶ 6, 51.

12

"at the *absolute* latest, the statute of limitations came and went on September 7, 2008, a year after [the state court foreclosure action] was filed," and this action was not filed until December 2013. R. 71 at 25. Even as replead, that continues to be the case. In support of her argument otherwise, Lockhart posits only that "Defendants" sent "letters" during the twelve-month period "leading to the filing of the foreclosure complaint." R. 163 at 10-11. But because the most recent foreclosure complaint was filed in September 2007, this does not change the analysis, and her claim is dismissed.

***FHA (Count V; HSBC Defendants).*** Lockhart repleads her FHA claim against the HSBC Defendants, despite that the Court previously dismissed it with prejudice as time-barred also. The HSBC Defendants argue that the claim remains time-barred and is inadequately plead (among other things). Lockhart's response brief does not address these arguments or discuss her FHA claim at all, so the Court considers it abandoned. *See Alioto*, 651 F.3d at 721. Accordingly, it too is dismissed.

***HOEPA (Count VI; all defendants) and TILA (Count IX; MERS and HSBC Defendants).*** Lockhart's HOEPA claim was previously dismissed with prejudice as to all but the MERS and HSBC Defendants, and her TILA claim was dismissed with prejudice as untimely. As plead in the SAC, the HOEPA and TILA claims again allege that Lockhart never received a notice of her right to rescind her mortgage as required, and seek rescission and damages (respectively) as a result.[4]

---

[4] HOEPA was enacted in 1994 as an amendment to TILA. Among other things, together, HOEPA and TILA grant borrowers the unconditional right to rescind a loan within three business days of "the consummation of the transaction," 15 U.S.C. § 1635(a), provided that if the creditor fails to comply with TILA's various disclosure

13

*See* R. 152-1 ¶¶ 86-88. But as discussed, Lockhart has abandoned all claims against the MERS Defendants. And to the extent Lockhart intended to bring these claims against the FAL or Pilgrim Christakis Defendants, they fail for the same reasons they did previously. *See* R. 71 at 29 (dismissing HOEPA and TILA claims as to the Pilgrim Christakis and FAL Defendants because law firms and attorneys are not "creditors").

The HOEPA and TILA claims also fail as to the HSBC Defendants. Indeed, Lockhart's TILA claim for damages remains subject to a one-year statute of limitations and is thus time-barred. *See* R. 71 at 30-31. And because the state court concluded that Lockhart failed to prove the timely rescission of her mortgage in response to her allegation otherwise, her HOEPA claim for rescission is precluded, even assuming the Court could grant Lockhart the relief she seeks. *See* R. 158, Ex. 8 at 2, 10 (state court decision holding that Lockhart's rescission claim was moot for failure to perfect a stay of the enforcement of the order for possession, and noting that "it is clear that we cannot grant Lockhart any meaningful relief with respect to the property, since she no longer has any right, title, or interest").

***Interest Act (Count VII and VIII; HSBC Defendants[5]).*** Count VII alleges that the HSBC Defendants are liable as assignees of a mortgage note that bears an

---

requirements, the borrower's conditional right to rescind is extended to three years post-consummation, 15 U.S.C. § 1635(f).

[5] The SAC specifically states that Count VII is as to the HSBC Defendants, but makes no specific statement regarding Count VIII. Nevertheless, the Court assumes based on several references to "HSBC Defendants" within Count VIII—and the context in which the allegations generally arise as well as the fact that this Court previously dismissed the claims as to all but the HSBC Defendants—that it also is against solely the HSBC Defendants.

14

interest rate that exceeds 8% and provided for a prepayment penalty, in each case in violation of the Interest Act. *See generally* R. 152-1 at 18-19. And Count VIII alleges that the HSBC Defendants violated the Interest Act by imposing late fees and collecting unlawful interest. *Id.* at 19-21. As discussed, this Court previously stayed Lockhart's Interest Act claims against the HSBC Defendants under *Colorado River* because the "exact same claims" were before the state court. The state trial court held at summary judgment that Lockhart's Interest Act claims were preempted by the Parity Act, and the appellate court affirmed. *See* R. 158, Ex. H at 13-17. Accordingly, the Interest Act claims are barred by *res judicata*.

***Punitive damages (Count X; all defendants).*** Finally, Lockhart's claim for punitive damages is dismissed because as in the 2014 Order, the Court has "dismissed each of the claims that would arguably support it." R. 71 at 38.

## II. Motion to Reconsider

The motions to dismiss resolved, the Court turns to Lockhart's motion for reconsideration of its 2014 Order. As stated, Lockhart previously (and unsuccessfully) moved for reconsideration of that order soon after the opinion was issued. But the Court allowed Lockhart to file the SAC when it lifted the stay on this case. And it was only after the defendants filed their various motions to dismiss the SAC that Lockhart moved for reconsideration of the 2014 Order a second time, this time asserting "manifest errors of law and fact due to the failure to recognize controlling precedent." R. 168. But the Court is not convinced.

15

### A. Standard

An interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions brought under Rule 54(b) are construed under the same standard applicable to motions under Rule 59(e). *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011). That is, a motion to reconsider is appropriate "to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it." *Janusz v. City of Chi.*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015). But such a motion may not be used to "relitigat[e] arguments that the Court previously rejected or . . . argu[e] issues that could have been raised during the consideration of the motion presently under reconsideration." *Caine v. Burge*, 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) (citing *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996)). Indeed, a party moving for reconsideration bears a heavy burden, *Caisse Nationale de Credit*, 90 F.3d at 1269, 1270; appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally as rare," *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

"Reconsideration of an interlocutory order is committed to the sound discretion of this Court, and is reviewed very deferentially and will only be reversed upon a showing that the Court abused its discretion." *Caine*, 897 F. Supp. 2d at 717 (citing

*Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co., LLC,* 244 F. Supp. 2d 890, 891 (N.D. Ill. 2002)).

### B. Analysis

Lockhart makes three arguments in support of her motion for reconsideration: (1) the Court erred in holding that she had to file her lawsuit within three years of the consummation of her loan in order to seek relief under TILA/HOEPA, and because she did timely rescind, the dismissal of her rescission and FDCPA claims was improper; (2) the Court erred in holding that her FHA claim was untimely; and (3) the Court erred in applying *Colorado River* to stay the claims not dismissed because the state courts lacked jurisdiction over them.

Lockhart's argument as to her timely rescission improperly characterizes the 2014 Order. In that Order, the Court expressly acknowledged that "the statute does not set forth a deadline for *filing suit* to enforce an obligor's right of rescission; it only provides a timeframe for pursuing rescission under 15 U.S.C. § 1635—i.e., the steps to provide notice of one's intent to seek rescission." R. 71 at 32 (emphasis in original). And because Lockhart alleged that she did not receive the required notice of her right to rescind and that she sought rescission within three years, the Court allowed her claim to proceed (subject to a stay under *Colorado River*). Ultimately, the state courts determined that Lockhart failed to present evidence of her timely rescission, and dismissed her claim. As discussed above, Lockhart is thus barred from relitigating that issue and claim. And because Lockhart's argument regarding the FDCPA depends on this Court concluding that she did timely rescind, it fails without further

17

analysis. *See* R. 168 at 3 (motion for reconsideration arguing that the FDCPA claim survived because "the mortgage was effectively cancelled on May 1, 2006 after the Defendants received Plaintiff's notice of rescission and ignored it").

Lockhart's argument regarding her FHA claim also fails. As discussed above, and regardless of the merits of her timeliness argument, Lockhart abandoned this claim by failing to respond to the motions to dismiss it as plead in her SAC. She may not now revive it by way of a motion to reconsider a ruling issued six years ago concerning an earlier version of her complaint.

Nor does her argument regarding *Colorado River* have merit. According to Lockhart, the Court's decision to stay the claims not dismissed was improper, because: (1) the state court lacked jurisdiction over her federal claim for rescission under HOEPA/TILA; and (2) the state court did not have jurisdiction to consider the foreclosure case for a third time. R. 168 at 5. But as to the first argument, Lockhart misses that state courts are courts of general jurisdiction, and may hear federal claims so long as they are not committed to the exclusive jurisdiction of the federal courts. *See Blount v. Stroud*, 904 N.E.2d 1, 17 (Ill. 2009). A claim under HOEPA/TILA is not. Further, while Illinois's single-refiling rule generally does permit a plaintiff to refile a case only once after voluntarily dismissing the same case, Lockhart has not shown how the rule applies here. According to the allegations in both the FAC and SAC, the state court foreclosure action underlying this case was the third foreclosure action filed against Lockhart with respect to her mortgage loan. *See generally* R. 6; R. 152-1. But for the single-refiling rule to bar the third foreclosure action, both of the

18

previous foreclosure actions would have to be the same; that is, based on the same default date and principal balance amount. *See Wells Fargo Bank, N.A. v. Norris*, 83 N.E. 3d 1045, 1051-52 (Ill. App. Ct. 2017) (third foreclosure action not barred where the second foreclosure action was based on a different default date and principal balance). Lockhart's argument regarding the single-refiling rule consists of a single sentence that lacks the detail necessary to evaluate it—even assuming it is appropriate for the Court to do so in the first place.

But more to the point, nothing prohibited Lockhart from advancing this same argument in the state court foreclosure action, or raising her arguments in support of her motion for reconsideration more generally in response to the defendants' original motions to dismiss, and/or when she initially moved for reconsideration of the 2014 Order. Indeed, the cases she cites were years old even then. Accordingly, regardless of whether Lockhart's arguments have merit, she cannot satisfy the standard for the Court to reconsider its ruling. *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). Lockhart's motion is denied.

## Conclusion

For the reasons stated, Lockhart's motion to reconsider is denied, R. 168, and all of the motions to dismiss are granted with prejudice, R. 155, R. 157, R. 159, R. 160. Civil case terminated.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: October 19, 2020